STATE OF MISSOURI, EX REL. L. B. BEACH, Appellant, *v.*
ANTOINE LOBSINGER, Respondent.

April 22, 1879.

1. Jurisdiction to try a contested-election case for justice of the peace in the city of St. Louis was not vested in the Municipal Assembly, the mayor, and the comptroller by the adoption of the Scheme and Charter.

2. In the absence of any general law on the subject, the Circuit Court has exclusive jurisdiction, and will go into the question in a proceeding in the nature of a *quo warranto*, and will, in the absence of any express prohibition, if necessary, examine the ballots to determine the right to the office.

3. Under the existing Constitution, the Legislature having prescribed no rule, there can be no inspection of ballots after the vote is counted.

4. The act of 1877 (Sess. Acts. 1877, p. 246) provides no restrictions and safeguards against the mischief contemplated by the constitutional provision.

APPEAL from St. Louis Circuit Court.

. *Affirmed.*

McGINNIS & SEARLE, for appellant: The Circuit Court was the proper tribunal. — *Groome* v. *Guinn*, 43 Md. 572. *Quo warranto* was the proper proceeding. — McCrary on Elec. 264; Walker's Am. Law, 556; 3 Bla. Comm. 263. *The State ex rel.* v. *Fourley*, 56 Mo. 113; *The State ex rel.* v. *Kemp*, 46 Mo. 528; *Hunter* v. *Chandler*, 45 Mo. 452; *The State ex rel.* v. *Lingo*, 26 Mo. 496; *The State ex rel.* v. *Stewart*, 32 Mo. 379; *The State ex rel.* v. *Lawrence*, 38 Mo. 535. In such a proceeding the ballots may be examined. — *The State ex rel.* v. *Sutton*, 3 Mo. App. 388; *Taylor* v. *Taylor*, 10 Minn. 107; *The People* v. *Jones*, 20 Cal. 50; *Calaveras County* v. *Brockway*, 30 Cal. 325; *The State* v. *Johnson*, 17 Ark. 407; *The People* v. *Seaman*, 5 Am. Dec. 409; *Attorney-General* v. *Barstow*, 4 Wis. 567; 17 Ill. 167.

HITCHCOCK, LUBKE & PLAYER, for respondent: Under sect. 3 of art. 8 of the Constitution, the ballots cannot be counted except under such regulations as may be prescribed, and as no act under this provision has been passed,

there is a *casus omissus.* — *Stamps* v. *Bridwell*, 57 Mo. 22 ;
*Ex parte Donaldson*, 44 Mo. 149. The right to count and
compare the ballots is to be given only in " contested elec-
tion " cases, not in cases of " *quo warranto.* " — *The State
ex rel.* v. *Fourley*, 56 Mo. 113 ; *The State ex rel.* v. *Vail,.*
53 Mo. 97, 117, 118. In the Muncipal Assembly, the
mayor, and the comptroller was vested the jurisdiction to try
this case. — Rev. Stats., sect. 5494 ; Wag. Stats. 573. sect.
50. There being a tribunal wherein the contest of this
election may be tried, namely, the Municipal Assembly of
the City of St. Louis, that mode of trial is exclusive, and the
relator here has on that ground also no right to go behind
the respondent's commission. — High on Rem, sect. 617 ;
*The State* v. *Marlow*, 15 Ohio St. 114 ; *The State* v. *Tay-
lor*, 15 Ohio St. 137 ; *The State* v. *Buskirk*, 43 Mo. —

BAKEWELL, J., delivered the opinion of the court.

This is an information in the nature of a *quo warranto*.
The relator contests the election of the respondent to the
office of justice of the peace for the district composed of
the Twenty-fourth and Twenty-fifth Wards of the city of St.
Louis. It appears that at the election on November 5, 1878,
James Meeghan and the respondent were opposing candi-
dates for that office. The allegation is, that a large number
of fraudulent votes were cast and counted for Lobsinger, in
consequence of which he was returned, received a certificate
of election and his commission, and entered upon the dis-
charge of the duties of the office. The return admits the
election, pleads the returns, denies that any fraudulent
votes were cast for the respondent, and avers that he was
duly elected ; and pleads in bar that Meeghan should have
contested the election by a proceeding in the nature of an
election contest, and that the Circuit Court has no jurisdic-
tion of the cause. The relator replies by a general denial.

The relator moved the court to appoint a commissioner
to open and inspect the ballot-boxes, and for an order on

the register to permit inspection of the ballots. The motion was overruled. On hearing of the cause, the relator offered to put in evidence the ballot-boxes, and to prove that certain ballots contained in them, and cast for the respondent, were fraudulent. Papers purporting to be copies of these fraudulent ballots were exhibited. The court sustained the objection of the respondent to the introduction of the ballots, on the ground that it had no power to direct the boxes to be opened and the ballots to be examined. The relator took a nonsuit, with leave, which the court refused to set aside, and the cause is brought here by appeal.

The General Statutes provide (Wag. Stats. 573, sect. 50) that "if any election of any * * * justice of the peace * * * or other county officer be contested, such contest shall be heard and determined by the County Court of the county in which the election is held, unless the decision of such contest be otherwise provided by law." The adoption of the Scheme and Charter at the election of August 22, 1876, did away with the County Court of the then county of St. Louis, and abolished the machinery of county government over the territory within which this election was held. An act of the General Assembly, approved May 2, 1877, entitled " An act to define and conform the laws of the State to section 23, article 9, of the Constitution," declares that " all acts and parts of acts which provide for the performance of any duty or trust by any County Court in this State shall also include the Municipal Assembly and the mayor and comptroller of the city of St. Louis."

It is contended by the respondent that the effect of this enactment was to vest the jurisdiction to try a contested election for justice of the peace in the Municipal Assembly, the mayor, and the comptroller. But the act can have no such effect, because the Constitution in force at the time of its passage provides- (Const. 1875, art. 8, sect. 9) that

"the trial and determination of contested elections of all public officers, whether State, municipal, judicial, or local, except governor and lieutenant-governor, shall be by the courts of law, or by one or more of the judges thereof. The General Assembly shall by general law designate the court or judge by whom the several classes of election contests shall be tried, and regulate the manner of trial, and all the incidents thereof.'' As no general law on the subject has been passed by the Legislature, the Circuit Court has exclusive original jurisdiction (Wag. Stats. 430, sect. 2; *The State ex rel.* v. *Lingo*, 26 Mo. 496); and, in the absence of any statute regulating the matter, they will go into the question in a proceeding in the nature of *quo warranto*. *The State ex rel.* v. *Sutton*, 3 Mo. App. 388; *The State ex rel.* v. *Fourley*, 56 Mo. 107; *The State ex rel.* v. *Kempf*, 46 Mo. 528; *The State ex rel.* v. *Stewart*, 32 Mo. 379; *The State ex rel.* v. *Lawrence*, 38 Mo. 535; *Hunter* v. *Chandler*, 45 Mo. 452.

Where no other means for such investigation are provided, in the absence of any constitutional or legislative prohibition, the qualifications of electors and the legality of the ballot may be examined in a proceeding by *quo warranto*, in the name of the State, to determine the right to an elective office. *The State ex rel.* v. *Fourley, supra; The State ex rel.* v. *Sutton, supra*. The Constitution provides, however (art. 8, sect. 3), that the election officer shall be sworn not to disclose how any voter shall have voted, unless required to do so as a witness in a judicial proceeding; provided that in all cases of contested elections the ballots cast may be counted, compared with the list of voters, and examined, under such safeguards and regulations as may be prescribed by law. This provision of the Constitution is new, and its obvious meaning is that the ballots cast at an election can be examined only in cases where there is a contest as to the election, pending before such tribunal having jurisdiction of the cause, and not then until the Legislature

shall have enacted safeguards and regulations under which this examination can be made. No such safeguards and regulations have been enacted by the Legislature up to the present time. The only provision on the subject of the examination of ballots, passed under the existing Constitution, is that of the Election Act. Sess. Acts 1877, p. 246, sect. 1. This act is an act to amend the Election Act as it stands in the revision of 1865. That act provided, amongst other things, that the clerk of the County Court having custody of the ballots should "not allow the same to be inspected, unless in case of contested elections, or unless the same become necessary to be used in evidence, and then only on the order of the proper court." Rev. Stats. 1865, p. 61, sect. 15. This provision is amended so as to read : " The said officer [that is, " the clerk of the County Court, or corresponding officer," in the language of the amendment] shall not allow the same to be inspected, unless in case of contested elections, or the same become necessary to be used in evidence, and then only on the order of the proper court, or a judge thereof in vacation, under such restrictions for their safe-keeping and return as the court or judge making the same may deem necessary."

This is really no substantial change from the provision of the former act as to the matter now under consideration. The court making an order for the inspection of ballots under the old law could of course make, and was bound to make, some order in regard to their safe-keeping and return, before the amendment. The ballots, under the old law, could be inspected only on the order of the proper court ; under the amended law, they may be inspected under the order of the court, or of a judge in vacation ; but in neither case are any safeguards or regulations provided by law for the counting, comparing, and examination of the ballots. The new law only speaks of restrictions upon the safe-keeping and return of the ballots ; and, even as to that,

makes no regulations whatever, leaving the whole matter as it was before, in the sound discretion of the judge ordering the inspection.

The meaning of the framers of the Constitution seems to be to protect the secrecy of the ballot by denying the right to reopen the ballot-boxes until the Legislature shall have provided such safeguards and regulations as in its wisdom it shall judge sufficient, to provide against the mischief of the act of each voter becoming known to the general public. A provision that the judge of any court ordering an inspection of the ballots should make regulations in the matter, would be no expression of the legislative will in regard to this matter. It would be no law on the subject, because it would prescribe no rule of conduct; it would neither command nor prohibit anything; it would impose no duty, and bind no one to anything. Though such an act might be rendered authentic by the proper forms and ceremonies, it would not fulfil the conditions of statute law, for it would be no declaration of the legislative will as to what particular safeguards and regulations should be thrown around the examination of ballots in election cases. The power of prescribing these regulations is delegated by the Constitution in terms to the Legislature, and it does not appear how they can altogether delegate this trust to another. *Thorne* v. *Cramer*, 15 Barb. 114.

This seems to be, therefore, a *casus omissus;* and, in the present state of the law, there is no power in the courts to open the ballot-boxes. As we have no legislative authority, we cannot supply this defect in the law. *Stamps* v. *Bridwell*, 57 Mo. 22; *Ex parte Donaldson*, 44 Mo. 149.

We think, therefore, that the learned judge committed no error in refusing the order to inspect the ballots. And, as this action of the court leaves the relator of the plaintiff without any evidence to support his case, the refusal to set aside the nonsuit necessarily followed. The judgment is affirmed. All the judges concur.