THE STATE ex rel. FUNKHOUSER v. SPENCER et al.

In Banc, June 18, 1901.

1. **Election: SECRECY OF BALLOT: CONTESTS: RECOUNTS: COURTS: LAWS.**
The only exception to the absolute and complete secrecy of the ballot prescribed by the Constitution, is in cases of contested elections, and in that it is only permissible to count the ballots, compare them with the lists of voters and examine them "under such safeguards and regulations as may be prescribed by law."  The courts can not prescribe rules and regulations for the recount, examination and comparison, but this can be done only under such safeguards and regulations as are enacted by the Legislature.

2. ———: ———: ———: ———: **COMPARISON WITH VOTING LISTS: PROHIBITION.**  No right has been given by law to the contesting parties and their attorneys in an election contest, to compare the ballots with the voting lists.  The circuit court has no power to order the election commissioners of a city or the county clerk and the parties to the contest to make a comparison of the ballots with the entire voting lists and to certify the details of such comparison to the court.  It can order them to open, count, compare and examine

all the ballots and certify the result (not the details) of such count, examination and comparison, but such order must be limited to allowing the parties and their attorneys to fully examine the ballots and to requiring the officers to certify any facts they may desire which may appear from the ballots. The officer is authorized to compare the ballots with the voting list to ascertain if it is a ballot cast by a person whose name appears on the voting list, and thereby determine whether it is a ballot that can be considered, and he can certify the result of such comparison—that is, that such comparison shows that the ballot was or was not cast by a person whose name is on the polling list. But the court can not go further and command the officers to allow the parties and their attorneys to compare the ballots with the voting lists, and require him to certify all the facts either party may desire "which may appear from an examination of the said ballots and a comparison thereof with the voting lists." Such an order would destroy the secrecy of all ballots, and therein violates the constitutional requirement for the secrecy of the ballot. There is no law giving the court power to order such a comparison. And this court will restrain the enforcement of such an order by writ of prohibition.

### Prohibition.

RULE MADE ABSOLUTE.

*John H. Overall* and *Charles W. Bates* for relator.

(1)   No court in this State before which a contested election is pending, or the clerk of any such court in vacation, can, by writ issued to a clerk of a county court or to a board of election commissioners, as the case may be, compel such clerk or board in the presence of contestant and contestee and their attorneys to open, count, compare with the list of voters and examine the ballots in his or its office which were cast at the election in contest and certify to the court from which the writ is issued, the result of such count, comparison and examination, so far as the same relates to the office in contest, as well as all the facts which either of the parties to the contest or their at-

torneys may desire and request to have returned and which may appear from the said ballots and the examination and comparison thereof with said voting list, affecting or relating to the election for the office in contest. Sec. 3, art. 8, Missouri Constitution; Secs. 7044, 7045, 7046, 7047, 7048, 7049, R. S. 1899; Windes v. Nelson, 60 S. W. 129; People v. Pease, 27 N. Y. 81. (2) No such writ may issue when contestant objects to the qualification of the one hundred and thirty thousand voters of the city of St. Louis and gives the entire registration list of said city, including contestant's own name, as being the names of the voters to whom he objects. Sec. 7029, R. S. 1899. On such a record the circuit court was without jurisdiction to order the ballots opened or counted or compared with the voting lists, because it is only in an election contest that the court has the power to make such an order, and under the facts alleged in this notice of contestant, a case is present for quo warranto and not for contest. And this is apart or aside from all question of the sufficiency of the notice or its amendability, for the circuit court ordered the ballotboxes opened and all the ballots counted and compared with the voting lists on a record that did not present a case of contested election. (3) The fact that contestee did not appear before the court below and object to the making of the order in question, does not stay the remedy afforded by the writ of prohibition to prevent usurpation of judicial power. State ex rel. v. Aloe, 152 Mo. 466.

*W. E. Fisse, G. A. Finkelnburg* and *Clinton Rowell* for respondents.

(1) It is of course impossible for any one person to know the names of all the men who voted at an election, nor is there any way by which he can obtain these names, except by

an order of court made in a pending election case. An inspection of the poll-books or registration books would only furnish the names without any more information, and therefore, if the right to object to particular votes because of the lack of qualification on part of the voter is not to be lost altogether (or practically lost by being limited to the names of those few individuals of whom personal knowledge can be obtained within a few days after the election), it must be availed of by a large claim such as is made in the notices and petitions in these cases. It is strange that in the case of the only feature as to which the statute seems to require particularity of statement in these election contest notices, such particularity is required as to a matter concerning which it is entirely impossible in the case of large cities to have or obtain definite knowledge at the time when the notice is required to be made ready. Particular and specific allegations can only be pleaded as definite information is required and must be introduced into the pleading, or what stands for the pleading, by amendment after the filing of the petition or notice. (2) We have studied the applications in the cases at bar with care, but the most assiduous attention has failed to discover any allegation against the propriety of the order, except that it will reveal or may reveal how every man voted at the last election. Since the object of the order is to obtain this very information in order to correct the alleged errors of the judges and clerks at the election and to supersede and overturn the returns of election cast up by them, the objection that the order complained of will be effective for that purpose, is without any force whatever, unless it is intended by these proceedings to establish that there is no law by which the errors of election and canvassing officers, whether innocent or malicious, can be discovered and corrected. The very fact that it is attempted by the use of the highest sovereign writ known to our law to resist an investigation of wrongs and

State ex rel. v. Spencer.

frauds at an election by prohibiting the employment of the original material and documents, is sufficient to at once arrest attention. In this aspect these cases are of the very highest importance. Involved in their decision are the highest rights of citizenship and the essential elements of our political institutions. In cases which are pregnant with such grave consequences we have no disposition to give any time or spend any energy upon matters of mere form. We, therefore, pass over without notice any objections to the mere technical sufficiency of these applications. Any examination of the several orders now brought to the attention of this court must lead to the conviction, that in every particular there has been the most extreme care exercised to protect every public and private right involved in the privilege of suffrage, and the most cautious regard for every provision of the statute which has erected the safeguards and prescribed the regulations under which the secrecy of the ballot may be invaded for the high purpose of securing to the people of any community the actual services as officials of those men whom they have really elected to office. The orders now brought here for review really embody every point and feature of the best method and practice in such cases as it has been developed during the last twenty-five years. These orders neither omitted anything nor added anything to what the Constitution and statute of this State and the decisions of this court authorized or justified. We can not believe, however, that it is the real intention of the complainants to deny the right of the court to direct the commissioners to count the ballots that were voted at the election had for the offices in question. Beyond doubt it is the comparison of these ballots with the list of voters that the parties really wish to have forbidden and prevented. But what good result could follow from the mere count of ballots without this comparison? Would a mere count of the votes found in the ballotboxes, disregarding the question of

the right of the persons to vote that cast these ballots, establish the result of the election? If such a recount had any effect whatever to alter the result of the election, could that effect be produced otherwise than by the application of technical rules concerning the preparation of the ballot by the voter, or the marking of these ballots by the election officers? The right to resort to ballots and pollbooks in election cases has long been established. It is equally well established that the ballots and pollbooks are undoubtedly better evidence of the vote cast than the returns, and that they should prevail wherever there is any difference. 10 Am. and Eng. Ency. of Law, pp. 830-834; State ex rel. v. Hoblitzelle, 85 Mo. 620; Art. 8, sec. 3, Constitution. Even upon the most casual reading of the constitutional provisions, one fact is sure to attract attention, and that is, the entire absence of any provision forbidding the use of ballots and lists of voters in contested election cases by the parties to these cases. (3) If in an election contest there is not to be allowed full opportunity to investigate every vote at the election in order to ascertain the name of every man who voted at that election, and to show how he voted according to the record of the election officers, there is no way by which it can be established that there was fraud or wrongdoing at the election. The proceedings in the contest would be limited to a mere recount of the ballots, and the result would be that the election would not be made to depend upon the will of the honest voters and the honest ballots, but would be made to turn entirely upon the errors and omissions, willful or accidental, of the election officers. No opportunity would be given to allow for the operation of any consideration of the voter's qualification; or the actual exercise of the privilege by only qualified and proper persons. Nor would there be any greater opportunity to show that the judges by grossest fraud had tampered with the ballots and changed their character entirely; or

even that they had willfully recorded as a vote in favor of A, a ballot which was actually made out and which read as a vote in favor of B.    Without the right to fully compare the ballots with the list of voters, there is actually no opportunity whatever allowed to contradict the returns of elections as proclaimed by the election officers.    These returns are under these circumstances made the conclusive evidence of the result of the election and any impeachment of the returns is limited to matters of the technical preparation of the ballots by the voter and by the judges of elections and to the mere number of the ballots.    (4) In order that the petitioners shall be able to successfully support their contention, that it is improper in an election contest to also allow the parties to inspect the poll books or lists of voters, it devolves upon them to point to some provision of the statute which removes these books or lists from the examination and inspection admittedly allowed in the case of the ballots. State ex rel. v. Hoblitzelle, 85 Mo. 620; State ex rel. v. Railroad, 86 Mo. 13; State ex rel. v. Francis, 95 Mo. 44; State ex rel. v. School Board, 131 Mo. 505.

MARSHALL, J.—This is an original proceeding in prohibition, to prohibit the respondents from carrying out an order of the Hon. Selden P. Spencer, as judge of the circuit court of the city of St. Louis, on the other respondents as election commissioners of that city, to examine the ballots and compare them with the voting lists, cast at the general election, in the year 1900, in the city of St. Louis, for the office of coroner of that city.

Robert M. Funkhouser, the relator, was the Democratic nominee for the office of coroner of St. Louis, at the general election in 1900, and Henry Lloyd was the Republican nominee.    Funkhouser was declared elected, and Lloyd instituted a contest for the office, and among other grounds therefor he

procured from the board of election commissioners a printed copy of the entire list of registered voters of the city of St. Louis, containing about 130,000 names, and after erasing a few hundred names therefrom, made the same a part of his notice, and stated in the notice that the list contained the names of voters to whom he objected, stating his reasons for so objecting. Among the names of persons so objected to was that of Lloyd himself. Thereafter, he applied to Judge Spencer for an order on the election commissioners to examine and recount all the ballots cast at said election for said office, and to compare such ballots with the voting lists, and to certify the result of such examination, recount and comparison to the circuit court. Judge Spencer, sitting as such judge of said court, made the order asked, the portion thereof essential to this controversy being as follows:

"Now, therefore, these presents are to command you, and each of you, acting as the said board of election commissioners, or as deputy election commissioner and secretary of said board, and as the said board of election commissioners, and as deputy election commissioner authorized by law to exercise the full power and authority of the said board whenever occasion so to do shall arise under the law, to proceed to open, examine, count and compare with the list of voters in your office, all the ballots that were cast at the general election aforesaid for the office of coroner for the term above mentioned, and that you certify to this court, under your hand and seal, and as required by law, the result of such count, comparison and examination of the said ballots so far as the same relate to the office aforesaid, in contest in the election contest above mentioned; and in so certifying the result of such count, comparison and examination of the ballots you shall intelligently distinguish between ballots which were counted and those which were rejected by the judges of election acting in the several precincts of the city of

St. Louis, at the election aforesaid, and show the numbers upon said ballots and the initials and other writing upon each such ballot, whether counted or rejected; and you are further directed to begin the said count, examination and comparison of said votes, according to the directions of this writ, and to proceed with the same with all convenient and practical speed.

"To assist you in the performance of the duties herein required, you are authorized and directed to detail not exceeding four of the regular sworn assistants of your office, *who shall be, however, sworn to secrecy in the same manner that the parties and their attorneys are required to be sworn, according to the provisions of section 7046 of the Revised Statutes of the State of Missouri* 1899.

"You, and each of you as the board of election commissioners, as members of said board, and deputy commissioner, and all clerks detailed as assistants under authority herein granted, and each and all of you, are further required and commanded that in obeying this writ you shall proceed in all things according to law, and further that immediately upon the receipt of this writ you shall fix a day not more than thirty days after the date of the receipt of this writ, on which you will proceed to open the said ballots, and to count, examine and compare the same, as herein required, and you shall cause notice in writing of the day so fixed by you to be served on the contestant, Henry Lloyd, and the contestee, Robert M. Funkhouser, or their respective attorneys of record in this proceeding, at least five days before the date so fixed by you to open the said ballots, and count, compare and examine the same; and, further, that on the day so fixed by you you shall proceed in your office to open the said ballots in the presence of the said contestant, Henry Lloyd, and of the said contestee, Robert M. Funkhouser, and their respective attorneys, not to exceed two for each of the parties, all of whom shall be attor-

neys of record in this cause, or such of them as may demand to be present, and after administering to all such persons an oath binding them, as required by law, *that they will not disclose any fact discovered from such ballots, or by or through the examination of the said ballots and the comparison thereof with the said list of voters, except such facts as may be contained in your certificate of the result of such count, examination and comparison,* and you shall exclude from your office during the time while such ballots are open and being examined and counted and compared, all other persons whatever.

"You are further commanded in such count, examination and comparison of the ballots aforesaid, that you shall permit the said contestant, Henry Lloyd, and the said contestee, Robert M. Funkhouser, to be present during all of your proceedings, either together with their respective attorneys of record in this cause—not more than two for each party—or separately, and shall also permit the said attorneys for the contestant and contestee separately to be present during all the said proceedings, *and shall permit them and each of them, as they may request to fully examine said ballots and voting lists, and to compare the same, and in the return or certificate which you shall file stating your proceedings under this writ, you shall also return to this court under your hands and official seal all the facts which either of the parties to the aforesaid election contest may desire and request to have returned, and which may appear from the said ballots and the examination and comparison thereof,* affecting or relating to the election for the office now being contested in this proceeding. Herein fail not at your peril."

The election commissioners gave relator notice of intention to comply with the order, and thereupon he applied for and obtained from this court a preliminary rule against the said judge, the election commissioners and Henry Lloyd, con-

testee, prohibiting them from proceeding as proposed. The returns set up the order and justify it. The relator moved to quash the return of the judge, and demurred to the return of Lloyd.

## I.

The pivotal question involved is whether the circuit court had power to order the election commissioners and the parties litigant to make a comparison of the ballots with the voting lists and to require the election commissioners to return and certify to the court "all the facts which either of the parties to the aforesaid election contest may desire and request to have returned, and which may appear from the said ballots and the examination and comparison thereof."

Section 3 of article 8 of the Constitution is as follows:

"All elections by the people shall be by ballot; every ballot voted shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters, opposite the name of the voter who presents the ballot. The election officers shall be sworn or affirmed not to disclose how any voter shall have voted, unless required to do so as witnesses in a judicial proceeding: Provided, that in all cases of contested elections the ballots cast may be counted, compared with the list of voters, and examined under such safeguards and regulations as may be prescribed by law."

We thus start the solution of the question with the mandate of the Constitution that all elections shall be by ballot. An election by ballot was conceived and created to guarantee perfect freedom and independence of the voter, not only at the moment of depositing his ballot, but at all times thereafter except as the voter himself voluntarily lifts the veil of secrecy.

Vol 164 mo—3

This is not only a privilege of the voter but it is absolutely necessary for the preservation of our free institutions. [Cooley on Constitutional Limitations, p. 604; McCrary on Elections, sec. 488; People v. Pease, 27 N. Y. 81; Ex parte Arnold, 128 Mo. l. c. 265; Windes v. Nelson, 159 Mo. l. c. 76.]

Accordingly, it has been held by this court, that the ballots can not be examined in a proceeding by quo warranto (State ex rel. v. Francis, 88 Mo. 557), nor in a proceeding before a school board to contest the election of one of its directors (State ex rel. v. Board of Public Schools, 112 Mo. 213), nor by a grand jury to ascertain whether a voter has been guilty of a crime against the election laws of the State (Ex parte Arnold, supra).

In short, the only exception to the absolute and complete secrecy of the ballot is in cases of contested elections, and in that it is only permissible to count the ballots, compare them with the list of voters and examine them *"under such safeguards and regulations as may be prescribed by law."*

Immediately following the adoption of the Constitution of 1875, containing this provision, the courts began to order a recount, examination and comparison of the ballots with the voting lists, and inasmuch as the General Assembly had not prescribed any safeguards or regulations, each court making such an order framed rules and regulations for itself, as was the practice and law before the new Constitution was adopted. But in State ex rel. Beach v. Lobsinger, 7 Mo. App. 106, it was properly held that the courts had no power to make such regulations and rules, and that until the General Assembly enacted such safeguards and regulations the ballots could not be recounted, examined or compared with the voting lists.

Thereupon, the General Assembly enacted a code of safeguards and regulations, which have passed into the Revised Statutes of 1899, and appear as sections 7044 to 7049, inclu-

sive, and are as follows:

"Sec. 7044.  *County Clerk to Open, Count and Compare Ballots, Etc., When.*—Either house of the General Assembly, or both houses in joint session, or any court before which any contested election may be pending, or the clerk of any such court in vacation, may issue a writ to the clerk of the county court of the county in which the contested election was held, commanding him to open, count, compare with the list of voters and examine the ballots in his office, which were cast at the election in contest, and to certify the result of such count, comparison and examination, so far as the same relates to the office in contest, to the body or court from which the writ is issued.

"Sec. 7045.  *Writ to be Served; Clerk to Give Notice, Etc.*—Such writ shall be served, without delay, on such county clerk by the sheriff of his county, and on receipt of such writ such clerk shall at once fix a day, not more than thirty days after the date of the receipt of the writ, on which he will proceed to open such ballots, and shall cause notice, in writing, of the day so fixed to be served on the contestor and contestee, or their attorney, at least five days before such day.  Such notice may be served in the same manner as a writ of summons in a civil action; but in case either of the parties and his attorneys are not found in the county of such clerk, such notice may be served by posting same on the door of the county clerk's office.

"Sec. 7046.  *Clerk to Open Ballots; Who May Be Present.*—On the day so fixed the clerk shall proceed, in his office, to open such ballots in the presence of the contestor and contestee, and their attorneys, or such of them as demand to be present, and after swearing them not to disclose any fact discovered from such ballots, except such as may be contained in the clerk's certificate.  While such ballots are open and being examined, the clerk shall exclude all other persons from his office.

"Sec. 7047. *Ballots May Be Examined by Whom; Clerk's Return, To Contain What.*—The clerk shall permit the contestor and contestee and their attorneys to fully examine the ballots, and shall make return to the writ, under his hand and official seal, of all of the facts which either of the said parties may desire, which may appear from the ballots, affecting or relating to the election for the office in contest.

"Sec. 7048. *Ballots to be Resealed.*—After the examination of the ballots is completed, the clerk shall again securely seal them up as they were, and preserve and destroy them as provided by law, in the same manner as if they had not been opened.

"Sec. 7049. *Clerk's Certificate Prima Facie Evidence.*—The certificate of the clerk, made under the provisions of this article, shall be prima facie evidence of the facts stated therein; but the persons present at the examination of the ballots may be heard as witnesses to contradict the certificate."

These provisions, together with section 7114, Revised Statutes 1899, which provides that "no officer of election shall disclose to any person the name of any candidate for whom any elector has voted," and section 7254, Revised Statutes 1899, which requires the election commissioners to keep the ballots securely locked up, "not opening or inspecting them, nor allowing anyone else to do so, except upon order of court in case of contested election," constitute all the safeguards and regulations that have been prescribed by law.

Thus it will be seen that while section 7044 authorizes the court, before which any contested election may be pending, to order the clerk of the county court (in St. Louis the board of election commissioners) "to open, count, compare with the list of voters and examine the ballots in his office" and to certify the result of such count, comparison and examination to the court, it gives no such right to anyone except the clerk—not

even to the parties or their attorneys. The subsequent sections emphasize this feature and show that it is not simply a *casus omissus* but that it was deliberately and intentionally so framed. Thus section 7046 provides that the ballots shall be opened in the presence of the parties and their attorneys, "and after swearing them not to disclose any fact discovered from such *ballots* except such as may be contained in the clerk's certificate." It will here be noted that the oath of secrecy relates only to what may be discovered from the ballots, and does not impose any secrecy as to what is shown by a comparison of the ballots with the voting lists.

But this is not all. Section 7047 requires the clerk to permit the contestor and contestee and their attorneys "*to fully examine the ballots*," and further that the clerk "shall make return to the writ .... of all the facts which either of said parties may desire, *which may appear from the ballots* affecting or relating to the election for the office in contest."

· So that up to this time the Legislature has only given the parties or their attorneys the right to fully examine the *ballots* and to require the clerk to certify all the facts which either of the parties may desire *which appear from the ballots*. No right has been given them to compare the ballots with the voting lists. Such a comparison would disclose how the elector voted, and thereby lift the veil of secrecy, without his consent, to the parties and their attorneys, and they would be under no obligation not to disclose the information so obtained, for their oath of secrecy is limited by the statute "not to disclose any fact discovered from such ballots"—not from such a comparison. And if the contention of respondents, that the term "ballot" employed in section 7046 includes such a comparison of the ballots with the voting lists, be true, then it necessarily follows that the veil of secrecy would not only be lifted to the eyes of the parties and their attorneys, but also to the whole

world, for section 7047 requires the clerk to permit the parties and their attorneys to fully examine the ballots, and to make return "of all the facts which either of said parties may desire which may appear from the ballots." So that under such a construction the clerk could be required by the parties to certify to the circuit court and thus make a public record of every fact that appears from the ballots and from a comparison of the ballots with the voting lists, and in this manner a perpetual public record would be made of how every elector voted. And this is precisely what the circuit court ordered to be done in this case. That this is not the true or literal meaning of the law is conclusively shown by the fact that the parties and their attorneys are required to be sworn not to disclose any fact discovered from the ballots. If ballots includes voting lists, then what useful purpose would be subserved by swearing the parties to secrecy when all the facts so discovered would be made matters of public record in the circuit court by the return of the clerk? And yet the prime purpose of voting by ballot is to preserve inviolate the secrecy of the vote. Respondents argue, however, that without such a comparison, an examination of the ballots only would not accomplish all they want, and would not give them all the relief necessary to successfully contest the election. If this be so, then the remedy must be obtained from the Legislature. The courts have no more power to correct imperfect legislation by construction than they have to prescribe regulations and safeguards when the Legislature has failed to do so, and this as we have seen, was held, in State ex rel. Beach v. Lobsinger, supra, to be beyond the power of the judiciary.

But respondents further contend that such a comparison is necessary in order to detect and punish frauds in elections, and that this consideration is so paramount that the prime purpose of the law and of the ballot system must give way to it. It

is easy to demonstrate the fallacy of such a contention. In the first place, the Constitution does not permit even the ballots to be examined except in a contested election proceeding. This court has decided, in Ex parte Arnold, supra, that they can not be examined in order to detect and punish crime. Every good citizen and lover of liberty is in favor of honesty in elections and of punishing frauds in elections. But respondents do not show, nor can it be discerned, how the perpetrators of any fraud in the election can be punished in a contested election case. The sole purpose and the limit of possibility in such a case is to determine which of the two contesting individuals shall exercise the functions of the office in question. The proceeding is in the civil courts. If the trial of such a case, in such a forum, disclosed any amount of fraud, the perpetrators thereof could not be punished in that proceeding. It is not, therefore, true that such a comparison in a contested election case is necessary to detect and punish fraud in elections.

Respondents further contend that the prior adjudications of this court authorize such a comparison, and they cite, in support of their contention, the cases of State ex rel. v. Klein, 116 Mo. 259; State ex rel. McCurdy v. Slover, 126 Mo. 652; Lankford v. Gebhart, 130 Mo. 621, and Nash v. Craig, 134 Mo. 347.

An examination of these cases shows that the point here involved was not raised, discussed or decided in those cases. In State ex rel. v. Klein, the main question involved was whether the ballotboxes could be opened and the ballots examined in a contested election case over a municipal office. The form of the order made by the circuit court and sought to be prohibited from being enforced is not stated in the report of the case, but respondents set it out in their brief in this case, and from that it appears that the order followed strictly the language of the statutes herein set out and commanded the re-

corder of voters to open, count, compare with the list of voters and examine all the ballots and to certify the *result* (not the details) of such count, comparison and examination, and to permit the parties and their attorneys "to fully examine the said ballots; and in making such return to this court he shall include all the facts therein, which said contestor or said contestee or their attorneys may desire which may appear from said ballots affecting or relating to the election for said office." This complies strictly with the statute and the rule here announced, but it is vitally different from the order made by the circuit court in this case, in that in the case at bar, the order is not limited to allowing the parties and their attorneys, to fully examine the ballots and to requiring the officer to certify any fact they may desire which may appear from the ballots, but goes further and commands the officer to allow the parties and their attorneys to *compare* the ballots with the voting lists, and requires the officer to certify all the facts either party may desire "which may appear from the said ballots and the examination and *comparison* thereof." Which difference takes this case out of the rule laid down in the case of State ex rel. v. Klein, supra.    The circuit court in this case, also, after first requiring that the parties should take the oath required by section 7046, afterwards, in the same order, enlarged the oath required by that section and required the parties and their attorneys to swear "not to disclose any fact discovered from such ballots or by or through the examination of said ballots, *and the comparison of said ballots with the list of voters."* The italicized words constitute the enlargement.

State ex rel. v. Slover, 126 Mo. 652, was a proceeding to prohibit the circuit court of Jackson county from enforcing an order on the recorder of voters in that county to open and count the ballots, in a contested election case for the office of collector of the revenue of that county.    The opinion states that the sole

point raised is whether the circuit court had power to issue such a writ to the recorder of voters, when the statute provides that the order shall be directed to the clerk of the county court. Inasmuch as in Jackson county the recorder of voters performed the duties pertaining to elections that usually devolve upon the clerk of the county court, it was held that the writ was properly issued. But so far as appears from the opinion, the order did not direct the officer to permit the parties to compare the ballots with the voting lists nor to certify any fact the parties desired which might be disclosed by a comparison of the ballots with the voting lists. Counsel for respondents have set out in their briefs a copy of the order in that case, and it appears therefrom that the order was exactly like the order in the case of State ex rel. v. Klein, supra, and did not authorize or permit the parties or their attorneys to compare the ballots with the voting lists, nor did it require the officer to certify any fact the parties or their attorneys desired which appeared from such a comparison. What is said herein as to the Klein case, applies equally to the Slover case.

Lankford v. Gebhart, 130 Mo. 621, was an election contest case for the office of sheriff of Daviess county. The opinion states that, "On a proper order the ballots were opened, examined and recounted by the clerk." This is all that appears. It does not, therefore, appear that the point here involved of the right of the parties to compare the ballots with the voting lists and to have the officer certify all facts disclosed by such comparison, was raised or decided in that case. Indeed, it does not appear that anyone attempted to do such a thing in that case. The decision turned upon other points not involved here. Among the points involved in that case was this: The name of Frank Vance appeared on the pollbooks as one of the voters. No such person lived in the precinct. But there was a man named Frank Zentz, who was a qualified voter in the

precinct and who voted at the election, but his name was not on the pollbooks.    The trial court held that parol evidence was admissible to prove that the ballot was cast by Zentz.    This court held that was error, and incidentally referred to the constitutional provision (sec. 3, art. 8) that in contested election cases the ballots may be compared with the list of voters. But the point here involved was not present or decided in that case.

Nash v. Craig, 134 Mo. 347, did not raise or decide the question here involved.    It was there held that the duties imposed on the county clerk in respect to contested election cases might be performed by his deputy.    Other points were also decided, but they have no bearing on this case.

It is not, therefore, true that this court has ever before been called on to decide or has ever decided that the ballots may be compared with the voting lists by the parties to a contested election case, nor that they can require the officer to certify any fact they desire which appears from such a comparison, and thus make a public record in the circuit court of how any or all voters voted at any election for any office to be filled at such election.    If this was permissible then a contest as to every office to be filled would make a public record of how every voter voted for every office to be filled, and the inviolate secrecy of the ballot would be only an empty delusion.

Respondents, however, contend that they can accomplish this result by indirect means any way, and, hence, they should be allowed to do it directly as the order here under consideration allows, for they boldly and candidly aver that it is their purpose to find out how every elector voted.    They say that under the statute they can discover from the ballots all the facts apparent thereon, among others, the voting number of the person who cast the ballot, and then, under the decision in State ex rel. Thomas v. Hoblitzelle, 85 Mo. 620, they can, by man-

damus, compel the election commissioners to furnish them a copy of the pollbooks and lists used at an election, on which the voting number of the elector will appear, and that by putting the two together they will be able to tell how every elector voted.

This exhibits much ingenuity and resourcefulness on the part of counsel, but it is more plausible than correct.

At the time that case was decided it was the practice in St. Louis not to allow anyone to see or have a copy of the registration lists or pollbooks. The idea prevailed that this would prevent personation, for if it was not known to outsiders and especially to repeaters, who was entitled to vote, they would not know who to attempt to personate. Thomas had been a candidate for the office of city marshal and was defeated by Neiser. He wanted to institute a contest and alleged that in order to know whose votes to challenge it was necessary for him to know who had voted, and he applied for a mandamus to compel the recorder of voters to permit him to inspect the registration lists, pollbooks and lists used at the election. This court held that under the statute the seal of secrecy only attached to the ballots, and that the registration lists and pollbooks and lists used at an election were public records that anyone was entitled to inspect. But the court added, very significantly, "Nor can we see how an inspection of the pollbooks tends either to destroy or impair the secrecy of the ballot. While the inspector would learn from it who voted, he could not learn how or for whom the voter voted." Thereby clearly demonstrating that the court would not have permitted such an inspection if the secrecy of the ballot would be thereby destroyed or impaired. The court never dreamed in so deciding that it was affording a means for the secrecy of the ballot to be destroyed in the manner respondents here say it can be done.

Under the registration and election laws in force to-day

the registration lists are published and made public.   The law (sec. 7006, R. S. 1899) requires the judges and clerks to make up duplicate lists of the votes cast at any election, one copy to be transmitted to the clerk of the county court, and the other to be retained by the judges of election, "open, to the inspection of all persons."   So that there is no longer any occasion to call on the clerk of the county court or the election commissioners for a copy of the list of persons who voted at any election.   But as was said in the Thomas case, an inspection of such a list will not disclose how or for whom any elector voted.   But none of this is any authority for the order made in this case nor does this case or this statute allow any person to an election contest to compare the ballots with the poll lists and to have the clerk certify the result of such a comparison to the circuit court, and thereby make a public record of how and for whom every elector voted.

It is argued, however, that section 7044 authorizes the clerk of the county court to open, count, compare with the lists of voters and examine the ballots and "to certify the *result* of such comparison and examination" to the circuit court, and that in this way the fact may be or is authorized to be made public how any and every elector voted.   This is not the true construction to put on this section.   The clerk is authorized only to certify the *result* of the comparison—not to certify, as the order in this case requires, any fact either party may desire which appears from such a comparison.

Under this section the clerk is only authorized to compare the ballot with the voting list so as to ascertain if it is a ballot cast by a person whose name appears on the voting list, and thereby determine whether it is a ballot that can be considered. And he is only allowed or required to certify the result of such a comparison—that is, that such comparison of the ballots with the voting list showed that the ballot was cast by a person

whose name was on the polling list—but not to give the name of every voter so he could be connected with the ballots under consideration.    This is as far as the Legislature has yet given anyone permission to invade the secrecy of the ballot system. If this remedy is not sufficient or adequate to the wants, uses, purposes or desires of contestants or contestees in election contest cases, the remedy lies in having the law changed and made more to their liking, but the courts have no power to legislate on the subject nor to cure omissions nor to expand the law.

In his notice of contest, the contestant Lloyd objected to all of the 130,000 votes cast at the election, including his own, with the exception of a few hundred, which he designated by scratching them off of the complete list of voters which he attached to his notice.    The order of the circuit court is even broader or more sweeping than the notice of contest, for it not only permits the parties to examine all the ballots cast by the persons whose right is challenged and requires the officer to make public the votes of all the persons whose right to vote is challenged, but it permits an examination and exposure of every ballot cast, including those of the few hundred whose votes are not challenged.    There can be no good reason given for so exposing the votes of those whose votes are not challenged.    There is not even the usual pretense of necessity to detect and punish fraud available to justify this invasion of the secrecy of the ballot as to those whose votes are unchallenged.

This, however, arises from the indefinite and reckless character of the charges usually found in notices of contest. In this case the contestant objects to nearly every vote that was cast in St. Louis at the general election in 1900.    This includes those who voted for him as well as those who voted against him. · It even includes his own name among the votes objected to.    Of course, contestant does not object to the votes that were cast for him, for if he did, and the objection was

sustained, he would fail in his contest. But it is referred to in order to show the utter disregard of good pleading that is usually indulged in, and that has run to absurdity in this case. It also evidences an utter disregard for the rights of honest electors by attempting to expose how they voted. Public policy favors the detection and punishment of frauds in elections, but it protects the rights of the honest electors, and requires those who seek only selfish ends in election contests and who are not seeking to subserve public interests by the exposure of fraud to have some regard to the rights of the public and the honest voters. If fraud was detected in this way it could not be punished in such a proceeding, for the simple reason that the perpetrators of the frauds are not parties to the case before the court, and, hence, no judgment could be rendered against them. But as pointed out, the claim that such violation of the secrecy of the ballot is necessary to expose and punish frauds in elections, is wholly without merit in a contested election case, the sole object and purpose of which is to put out the contestee and install the contestant in the office in question.

There is no merit in the point that the circuit court reserved the right to amend, alter or modify the order in question. It has not done so, but on the contrary the judge here justifies it, so of course, he will not change it unless compelled to.

For these reasons the preliminary rule prohibiting the carrying out of the order of the circuit court is made absolute. All concur, except *Robinson, J.,* who dissents.