THE STATE OF MISSOURI ex rel. HUGH STEPHENS, Relator, v. OSBORN L. MOORE, Recorder, etc., Respondent..

Kansas City Court of Appeals, November 3, 1902.

1. Construction: STATUTORY: RULES. Certain, rules relating to the construction of statutes are applied to the marriage license statutes of this State.

2. Marriage: RECORD OF LICENSE: STATUTORY CONSTRUCTION. The manifest purpose of the marriage license statute is to make such licenses, returns and certificates public records so as to give notice to all the world, and all licenses should be placed on the record by the recorder when issued.

3. ———: LICENSES: COMPLETE INSTRUMENT: RETURN: RECORD. The license is a complete document and the return is likewise a distinct and complete document and this latter should be recorded when returned.

4. ———: LICENSE AND RETURN: DIFFICULTY OF RECORDING. Certain remedies obviating alleged difficulties in recording the license and return are suggested in the opinion.

Original Proceeding by Mandamus.

WRIT GRANTED.

*Silver & Brown* for relator.

(1) Mandamus will lie to compel a county clerk to discharge his general duties as clerk, as they arise, pending contest between rival county commissioners. In re Delgado, 140 U. S. 586; Dutton v. State, 42 Neb. 804; Ottawa v. People, 48 Ill. 233. (2) Respondent's duty to record the licenses is .fixed and unvarying, hence, mandamus is appropriate. Potioni Place v. Railway, 51 Kansas 609. (3) Where the object of the writ is to enforce a public duty not due to the government, as such, any private person may move to enforce it, and no previous demand is necessary. Railway v. Hall, 91 U. S. 343-345.

*W. S. Pope* for respondent.

(1) The license is a mere permit to marry. The marriage is what the law undertakes to perpetuate the evidence of, by recording. Secs. 4315 to 4323, inclusive. The recording of the authority to marry and the marriage is what the law requires the recorder to record. (2) We insist the remedy is by having a reasonable and intelligent law enacted on the subject, and not by mandamus. A recorder will not be mulcted in cost for following the letter of the statute. (3) Mandamus will not lie, except where the party applying has a clear and undoubted right to the relief prayed for. Dillon on Municipal Corporations (4 Ed.), sec. 287 and cases cited. (4) The court would have to require by its command that recorder record license when issued, leaving a blank space to record certificate of solemnization, and when returned with that return thereon, then record the return therein. Such a manner of keeping a record is unheard of. When the instrument to be recorded is finished then it is ready for record, and not before. People v. Curtis, 41 Mich. 723.

SMITH, P. J.—The respondent is the clerk of

the circuit court and ex-officio recorder within and for Cole county.

This is a mandamus proceeding, the object and purpose of which is to compel the respondent in his capacity as ex-officio recorder of said county to record in a well-bound book kept by him in his office for that purpose, each and all marriage licenses when the same are issued by him. The issue made by the pleadings in the case is whether or not the statute enjoins upon the respondent, as recorder the duty to record all marriage licenses in a well-bound book when issued by him.

In endeavoring to ascertain whether or not this duty is imposed, a glance at the following provision of the statute, believed to have a bearing, will no doubt be found to be helpful:

Section 4315 provides that previous to any marriage in this State a license for that purpose shall be obtained from the officer authorized to issue the same. Section 4316 provides that the recorders of the several counties when applied to by any person legally entitled to a marriage license, shall issue the same. This section, after prescribing the form of the license, provides further that the person solemnizing the marriage shall, within ninety days after the issue of such license, make a return thereon, prescribing the form of such return. Section 4316 further provides that the recorder shall record all marriage licenses issued in a well-bound book kept for that purpose, with the return thereon. Section 4318 still further provides, amongst other things, that every officer or person who shall fail to return a license within ninety days after the issuing of the same, shall be guilty of a misdemeanor.

And section 4319 also still further provides that the recorder of deeds of each county shall certify to the grand jury at each regular term of the court having criminal jurisdiction within the county *a list of all marriage licenses issued by him and which have not been returned to him* by the person who shall have

solemnized the marriage under said license within ninety days after the issue thereof, and any such recorder who shall fail to certify such list to the grand jury shall be guilty of a misdemeanor.

In construing a statute, the legislative intention may be sought in order to discover its meaning, and when such intention is discovered it should be followed with reason and discretion. In State ex rel. v. Haworth, 122 Ind. 463, pp. 477-8, it was declared: "It is not necessary that a statute should in direct terms declare the duty of an officer in order to make it an imperative one. The duty may be deduced from the general provisions and scope of the statute, regard being had to the evil intended to be remedied and the object sought to be accomplished." And in State ex rel. v. Slover, 126 Mo. 661, it was said that "a reasonable and beneficial meaning should be ascribed to a law where its literal sense will fairly permit it." It is one of the well-recognized canons of construction that what is implied in a statute is as much a part of it as if expressed.

While none of the statutory provisions to which we have called attention in express terms require that the marriage license shall be recorded at the time it is issued, still, is not this requirement as clearly implied as if it had been expressed? May not this duty be fairly deduced from the general scope of these provisions? It will be observed that the statute requires the recorder to record all marriage licenses in a well-bound book kept for that purpose, and this is the only record of such licenses he is authorized to make. No memorial of such licenses is anywhere required to be made and recorded. If he is not required to record such licenses when issued, how can he tell from any record in his office that any one or more of them have not been returned? If he has not recorded them when issued by him, how is he to certify to the grand jury, as is his duty under said section 4319, a list of such of them as have not been returned to him by the person solemnizing the marriage under them within ninety

days after the issue thereof? From what record au-
thorized by law does he make out and certify this list?
Is it to be made out from a private memorandum or list
kept by him, or from memory? A construction lend-
ing countenance to this would be intolerable. Suppose
the recorder die, resign, or his term of office expire,
while one or more licenses issued by him have not been
returned by the person solemnizing the marriage with-
in the ninety days required by the statute, how can his
successor certify the list required by said section 4319?
To what record or memorial of his office can he have ac-
cess to ascertain what licenses have not been timely
returned? Suppose some person who has solemnized a
marriage under a license has not made return thereon
to the recorder, as required by the statutes, is indicted
by the grand jury under section 4318 for his failure to
return such license, how is the State at the trial on the
indictment to establish its prima facie case? The li-
cense itself would be the best evidence but that would
be in the possession of the defendant; and the record
of such license would be the next best evidence, but
since there would be no such record the State's case
would probably fail at that point.

The manifest purpose of the marriage-license
statute was to make such licenses, returns thereto, and
certificates of marriage, public records so as to give
notice to all the world of the occurrence to which they
severally relate. Their contents thereby become
matters of public knowledge because the law requires
them to be kept, authorizes them to be used, and se-
cures to all persons access to them, that knowledge of
them may be public. It would therefore seem that a
construction of the marriage license statute that re-
quires the recording of all licenses when issued would
obviate and clear away the difficulties which present
themselves under the contrary construction for which
respondent contends. After a rather full examination
of the entire marriage-license statute in all its length
and breadth, we have been unable to escape the con-
viction that the Legislature intended that the licenses

authorized by it should be placed on record by the recorder issuing them *when issued,* and in accordance with that conviction we must so rule. This construction, it seems to us, will best subserve the purpose of the statute.

The respondent suggests that the rule in respect to recording such instruments as the law demands shall be recorded does not require them to be recorded until they are finished. Conceding this to be the general rule of practice prevailing in respect to such instruments, does the recording of a marriage license when it is issued violate it? When the blank form of the license has been filled out by the recorder and his hand and official seal affixed thereto, is not there a finished instrument? The return to be made thereon to him by the person solemnizing the marriage is the independent act of another. Such return is not necessary to complete the license. The license is as distinct from the return as a writ of summons issued by a clerk of a court of record is from the return made thereon by the sheriff.

Nor do we discover any insuperable difficulty in the way of recording the license when issued, and, later on, when the return is made, to record it. If it be true, as we have been informed, that there are well bound record books now made and in use by the recorders in some of the counties in which the blank form of license and return prescribed in section 4316 are printed in the same order as therein, it would seem that a recorder provided with such a record book could without the least inconvenience record a license *when issued* by him, filling out a blank in his record of marriage licenses, and, later on, when the return is in, fill out the blank for it immediately following the record of the license, and thus complete the record of both instruments. Whether such printed record book for recording marriage licenses and the returns thereon are in use or not, it is easy to see that it is practicable to procure them, and in them to record, without inconvenience, all marriage licenses *when issued* and the re-

turns thereto *when made.*

It results that the relator's motion for a peremp-
tory writ must be sustained, and the writ ordered ac-
cordingly. All concur.