THE STATE *ex rel.* McCURDY v. SLOVER, *Judge, et al.*

### Division One, February 19, 1895.

1. **Constitution**: CONTESTED ELECTION CASE: EXAMINATION OF BALLOTS.  Under the constitution and laws governing elections and the registration of voters in the large cities of Missouri, the circuit court of Jackson county has power, in a contested election case, to direct an examination of the ballots cast at a general election, and which are in custody of the recorder of voters in Kansas City.

2. ——: ——: ——: ——.  Statutes *in pari materia* are to be construed as one law.

3. ——: ——: ——: STATUTE.  Where the duty is devolved by the constitution on the general assembly to provide a mode for examining ballots in election contests, and the assembly has legislated in regard to such contests, such legislation should be construed so as to comport with the performance of said duty, if such construction can be fairly and reasonably put upon that legislation.

4. **Statutes, Construction of.**  No law should be given such a construction as to permit a public wrong or mischief unless its language is so free of doubt as to permit no other.  In case of any uncertainty, a reasonable and beneficial meaning should be ascribed to it.

5. ——.  The construction of statutes is but a judicial reading of the intent of the lawmaking authority, as exhibited by the words used to express that intent.

6. ———. The consequences of a proposed construction of a law may properly be considered as a guide to the probable intent of its language.

7. ———. What is within the plain meaning and implication of a statute is as much a part of it as its strict letter.

8. **Prohibition.** The writ of prohibition is available to keep a court within the limits of its lawful power in a given case, no less than to prevent its cognizance of causes not committed by law to its jurisdiction.

### Prohibition.

WRIT DENIED.

*F. C. Farr, Garner & Walsh* and *Flournoy & Flournoy* for relator.

(1) All matters pertaining to a contested election case must be regulated by statute, as the right to make the contest and jurisdiction of any court to hear the same is purely statutory. (2) The constitution of this state prohibits the opening of the ballots cast at any election except in case of a contest, and not then until the general assembly has designated the court or judge by whom the several classes of election contests shall be tried, and regulated the manner of trial and all matters incident thereto, and prescribed safeguards and regulations under which the examination of the ballots may be conducted. Constitution, art. 8, secs. 3, 9; *State v. Lobsinger,* 7 Mo. App. 106; *State ex rel. v. Dillon,* 88 Mo. 487; *Taaffe v. Ryan,* 25 Mo. App. 563; *State ex rel. v. Francis,* 88 Mo. 557. (3) Provision has been made by the general assembly for opening the ballots cast at an election in this state in either the city of St. Louis or any county save Jackson, but in the case of the county of Jackson the general assembly has failed to make such provision. The only provisions of our statutes pertaining to the subject

are: Sections 990, 4672, 1006, 4706, 4721 to and including 4726, 1010, 1012, and 4793, Revised Statutes, 1889. (4) Term "herein" occurring in an act has reference to the act in which it occurs and not to some previous act. *Movius v. Arthur*, 95 U. S. 144; *McGill v. Council*, 12 U. C. Q. B. 44; *Hartung v. People*, 28 N. Y. 404.

*I. N. Watson* for respondent.

Under the authorities and from the act of 1889 itself relating to elections it must be held that section 4793, of article 3, of chapter 60, of Revised Statutes, 1889, confers upon the recorder of voters of Kansas City the same powers and duties imposed upon county clerks, where they exercise similar duties under the general election laws; therefore the application of the plaintiff for an order of court upon the county clerk and the recorder of voters to open the ballot boxes and count and compare the votes as prayed should be granted.

BARCLAY, J.—This is an original proceeding to obtain a writ of prohibition against one of the judges of the circuit court of Jackson county.

The plaintiff is Mr. McCurdy. It appears that he is defendant, or contestee, in a statutory proceeding pending in that court, to contest an election held in November last, in Jackson county, for the office of collector of the revenue. Mr. DeBord is the plaintiff or contestant therein.

Judge SLOVER, as the circuit judge before whom that proceeding is in progress, has issued a writ or order directed to the recorder of voters of Kansas City, commanding him to open and count the ballots cast at the last general election (November, 1894) for the office referred to.

The order conforms to the provisions of section 4721 (R. S. 1889) as to form, and no question is raised on that score.

Nor is any question made as to that part of the writ or order which refers to the county clerk. As the office in question is a county office, the ballots cast outside the city (now in custody of the county clerk) were required by the order to be examined, as well as those cast inside the city, which were in possession of the recorder of voters.

The sole point of the present controversy is whether or not the circuit court of Jackson county has jurisdiction to direct such a writ to the recorder of voters, and to cause an examination of ballots cast at a general election, while they are in the custody of that officer.

The plaintiff in this court, Mr. McCurdy, asserts the negative of that proposition. Hence he has brought the present application for a prohibition to test the validity of the order of the circuit judge. If the court had no lawful authority to make it, that is to say, if the order was beyond the power of the court in the pending election contest, the writ of prohibition would undoubtedly lie, notwithstanding the court might have general jurisdiction over election contests, and hence over the subject-matter of the proceeding. For it is settled law that prohibition may be used (upon a proper showing) to keep a court within the limits of its lawful authority in a given case, no less than to prevent cognizance of causes not committed by law to its jurisdiction.

In the case in hand, no exception in regard to the mere form of procedure, either on the circuit, or in this court, is taken. Both parties deal with the substance of the dispute, and so will we.

The constitution of Missouri declares that all elections by the people shall be by ballot. Const., 1875,

art. 8, sec. 3. It contains other commands intended to secure protection to the voter in regard to the secrecy of his ballot. But it adds, "That in all cases of contested elections the ballots cast may be counted, compared with the list of voters, and examined under such safeguards and regulations as may be prescribed by law."

It also confers jurisdiction to try and determine all contested elections of public officers (except governor and lieutenant governor) upon the judiciary; and declares that the general assembly shall designate the court or judge by whom the several classes of contests shall be tried, and shall regulate the manner of trial, etc. Const., 1875, art. 8, sec. 9.

The organic law also directs the general assembly to provide for the registration of all voters in cities and counties having a population of more than one hundred thousand inhabitants. Const., 1875, art. 8, sec. 5.

By an act, approved March 27, 1883, any court before which any contested election may be pending, is authorized to issue a writ for the opening and counting of ballots under certain safeguards mentioned in a later section (3) of the same statute. But the language of that law requires the writ to go "to the clerk of the county court of the county in which the contested election was held." (Laws, 1883, p. 91, sec. 1.)

The act of March 27, 1883, has been embodied in the revision of 1889 (sections 4721–4726), as part of chapter 60 on "Elections."

The position of the plaintiff in the case at bar is that this law confers the only authority for such an examination of the ballots as is impending in the circuit court in the contest of DeBord against McCurdy; and that it applies only to county clerks, and can not be made to apply to the recorder of voters of Kansas City, without violence to its express terms.

If the section above quoted stood alone, the contention of the plaintiff would have very serious weight. But it does not now stand alone.

The section belongs to a somewhat elaborate scheme of legislation, touching elections, and it is hence necessary to see whether other parts of that legislation, on the same topic, indicate a legislative purpose to enlarge the literal scope of the language on which plaintiff, McCurdy, relies.

If the position of the latter is correct, no examination of ballots cast in Kansas City can be had in contested elections under the existing law.

It is our duty to determine whether that is the true meaning and effect of the law of Missouri.

At the same session of the general assembly which produced the act of March 27, 1883, "an act to provide for the registration of all voters in cities having a population of more than one hundred thousand inhabitants," etc., approved, March 31, 1883, was passed. (Laws, 1883, p. 38.) It provides for the appointment of a recorder of voters in cities of the size mentioned, and, among other things, names him as the custodian of the ballot boxes and ballots, and declares that "the recorder of voters shall not allow the same to be inspected or handled unless in case of contested elections, or unless the same shall become necessary to be used in evidence, and then only on an order of a proper court." Laws, 1883, p. 45, sec. 20.

The act of March 31, 1883, was engrafted (with some amendments) upon the charter of cities of the first class in the revision of 1889 (sections 987 to 1014). It will not be needful now to inquire whether the form of revision then followed in respect of this topic was entirely correct; for if not, the law of 1883 remained, while, if that mode of revision was sound, our judgment in the case in hand would not be different.

The section (20) last mentioned, as it appears amended in the revised statutes of 1889, declares that the recorder of voters shall safely keep the ballots, etc., for twelve months, not inspecting their contents or allowing any one else to do so, ''except upon a lawful order of a court in case of a contested election.'' (R. S. 1889, sec. 1006.)

Section 24 of the act of March 31, 1883, contained the following language (which was re-enacted in 1889, with a change of the word ''act'' into article, section 1010), viz.:

''All elections in such city shall be conducted in all respects as provided in this act, and subject to all the provisions of the Revised Statutes, entitled 'Of Elections,' so far as the same do not conflict with this act.''

Another section of the act of March 31, 1883, has some bearing on the present discussion.

In the revision of 1889 it does not appear; but other language appears instead; language which, at the time, was no doubt supposed to be equivalent in effect to the first draft.

Changed conditions, however, make the difference of text noteworthy. So we place the two sections side by side, viz.:

| ACT OF 1883, SEC. 26. | R. S. 1889, SEC. 1012. |
|---|---|
| ''The recorder of voters shall perform all duties now required of clerks of county courts by general law, and shall have the same power and authority of such clerks for the purposes herein stated.'' | ''In cities not within counties, the recorder of voters shall perform all duties now required of clerks of county courts by general law, and shall have the same power and authority of such clerks for the purposes herein stated.'' |

In 1889, the so-called Australian ballot law was first enacted in this state. It was passed as a separate statute. Laws, 1889, p. 105. But it was printed in

the revision of that year as article 3 of the chapter on elections.

In that statute we find the following section, referring to recorders of voters, and indicating, in some measure, the legislative view of their proper place in the election system, viz.:

"Sec. 4793.   The powers and duties herein given to and imposed upon the clerks of the county courts of the several counties shall be exercised in reference to the city of St. Louis and to Kansas City, and to any other city hereafter having a registration of voters, by the recorder of voters of such city."

We have quoted the foregoing passages from the statutes because they bear most directly on the vital point of the pending controversy.   But beyond them, the entire chapter on elections (Ch. 60, R. S. 1889) and all the provisions of law regulating the functions of the recorder of voters in the large cities, should be kept in mind, as well as the commands of the constitution in regard to the conduct and decision of elections.

The law governing elections and the mode of ascertaining their results, though embodied in several distinct statutes, should be construed as one law, and considered as a whole in endeavoring to arrive at the true meaning of any disputed part.

As was remarked by a very learned judge, "the correct rule of interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts *in pari materia* are to be taken together, as if they were one law" (WAYNE, J., in *United States v. Freeman* (1845), 3 How. 564).

Some other general considerations should be mentioned.

The organic law of the state plainly places upon

the legislature the duty of providing a procedure for the examination of ballots in "all cases of contested elections." Const., art. 8, secs. 3 and 9.

If the contention of the plaintiff in this court is tenable, that duty has not been performed as to Jackson county; but, on the contrary, the results of elections there must depend wholly on the certificates of the election officers.

In permitting some invasion of the secrecy of the ballot, the constitution obviously intended to accomplish the purpose of preventing frauds upon the franchise that might escape detection if no inspection of ballots could be had.

So the terms of that instrument sanction a limited scrutiny of the ballots in order to avert what is considered the greater mischief of a different policy.

As the duty to provide for such an inspection, in election contests, devolves upon the general assembly, and the latter has legislated at great length upon the subject of elections, it certainly is proper, in interpreting its work, to place such a construction upon any language of doubtful import, as will comport with a proper discharge of that duty. For the legislature, no less than other public officers, should be presumed to have acted rightly, and to have performed its full duty, unless the contrary clearly appears.

Moreover, no law should be given such a construction as to permit a public wrong or mischief, unless its language is so lucid and free of doubt as to permit no other.

The construction of statutes is but a judicial reading of the supposed intent of the lawmaking authority as exhibited by the words used to express that intent. It is never to be supposed that such an authority would intend to bring about a public mischief, where the

language of the law is open to any other interpretation. *Smith v. People* (1872), 47 N. Y. 330.

It is a familiar canon of construction that, in case of any uncertainty, a reasonable and beneficial meaning should be ascribed to a law, where its literal sense will fairly permit it.   Rutherforth's Insts. [2 Am. Ed.], pp. 414, 421.   And the results and consequences of any proposed interpretation of a statute may properly be considered as a guide to the probable intent of its language, when subject to construction.

The foregoing general principles are resorted to as aids to clear up any just and substantial doubts of the meaning of a given law.   They do not, however, control, if at variance with a positive command of the legislature.

If the terms of a statute are unambiguous, and its purport clear, it is the duty of the judiciary to so declare, and to give them effect, leaving the responsibility for the wisdom of the enactment upon that department of the government from which it comes.

Let us then consider the statutes which form the election law governing Jackson county, and especially the spirit and design of the sections already quoted, with reference to the point of dispute in the pending case.

Kansas City has a population of over one hundred thousand, according to the last census, of which the courts take judicial notice.

That city is hence within the scope of the act of 1883 creating the office of recorder of voters in such cities and defining their duties.

The law of 1883, in regard to election contests, mentioned the county clerk as the only custodian of the ballots, and required the writ for their examination to be directed to such a clerk.

But the act of 1883, establishing the office of

recorder of voters, and the act of 1889, adopting the Australian system of voting, both contemplate, or expressly provide, that, in Kansas City (as a city of the requisite size) the recorder of voters shall exercise, in said city, some, at least, of the powers and duties, which in the country would devolve upon the county clerk.

By the very act creating the office of recorder of voters the general election law is expressly made applicable to elections in which the recorder figures (R. S. 1889, sec. 1010; Laws, 1883, p. 46, sec. 24). And "all elections" in such cities   *   .*   *   are "subject to all the provisions of the Revised Statutes, entitled 'Of Elections,' so far as the same do not conflict with" that act.

The language brings the whole election code of the revised statutes within the scope of the subject comprehended by the recorder of voters act, and authorizes the treatment of those laws as one, for the purposes of construction.

Yet the general election laws of 1889 (sec. 4721, and following) provide for contests of elections and for the examination of ballots (on a proper order) in such cases, as did the act of March 27, 1883.

Did the legislature intend that the recorder of voters should stand in place of the county clerk in performing the necessary duties imposed on the latter by the act in regard to contested elections, so far as concerns the ballots placed in his custody?

There can be no doubt of an affirmative answer on this point, according to section 26 of the original act of March 31, 1883, already copied. But the change of language in section 1012 of the revision of 1889 is supposed to confine the effect of that section to St. Louis only.

We shall not need to inquire whether the amend-

ment of 1889 left the old act in force as to the cities not comprehended within the changed phraseology. We think we see our way clear to reach a just and satisfactory result without discussing the law of repeals by implication.

In section 20, of the act of March 31, 1883, as well as in section 1006 (R. S. 1889), it is declared that the recorder of voters shall be the custodian of the ballots cast in the city, and that he shall keep them safely for twelve months, and not allow them to be examined, except upon the lawful order of a court in case of a contested election.

The election law furnishes the particular directions to be observed in contests where such an examination becomes necessary (Laws, 1883, p. 91; R. S. 1889, sec. 4721, etc.). The recorder's act merely substitutes that officer for the county clerk in those instances where the former, instead of the latter, is the official custodian of the desired evidence.

It is true that the words of section 1006, and of the prior section on which it is founded, do not in express terms authorize the issue of a writ to the recorder for an examination of the ballots. They rather assume, than confer, the power to conduct such an examination. But as an expression of legislative intent, in reference to that subject, they are full of meaning. Such a plain exhibition of the purpose of a law should be held to illuminate and enlarge its strict letter.

Thus, where an act of congress mentioned a juris-. diction of certain courts as existing, though it had not been in fact already conferred, Chief Justice MARSHALL, on behalf of the supreme court of the United States, said: "It is true that the language of the section indicates the opinion that jurisdiction existed in the circuit courts, rather than an intention to give it; and a mis-

taken opinion of the legislature concerning the law, does not make the law. But if this mistake is manifested in words competent to make the law in future, we know of no principle which can deny them this effect." *Postmaster General v. Early* (1827), 12 Wheat. 148.

We are well aware that, in the reported decisions in this state, the principle of that ruling has not always commanded the sanction which it merits. Nevertheless, we believe the principle to be sound and just, and supported by a great mass of able judgments to the effect that what is within the plain meaning and implication of a statute is as much a part of it as its letter.

The powers and duties of county clerks in regard to the execution of the Australian ballot law are distinctly confided to the recorders of voters in Kansas City and St. Louis by section 4793 (R. S. 1889); and section 24 of the act of March 31, 1883 (similar to section 1010, R. S. 1889), indicates that the general law of elections is to be considered amended by that act, so far as it relates to the large cities having recorders of voters.

When we take into view all the statutes governing registration and elections, and apply to them the principles of construction noted in the opening passages of our commentary on the case, it appears to us that the trial judge was entirely right in directing a scrutiny of the ballots in the possession of the recorder.

Such an examination is often the only available mode to bring to light frauds upon the right of suffrage.

No court should close such an avenue of investigation, except in obedience to the clearest and most unequivocal expression of the legislative will.

The legislature was bound, under the constitution,

to provide for such an examination of the ballots as part of the mode of procedure for the discovery of truth in election cases, and we should not hold that it had failed in that duty if the terms of its acts on that subject will fairly permit a different construction.

In the state of the law above disclosed, we think the intent of the lawmakers on this topic is measurably clear, and that it is in consonance with their duty in that regard.

The wording of the statute, it is true, is not so plain as to permit no controversy; but we believe the purposes and objects aimed at are sufficiently expressed to support the conclusion we have reached, which agrees with that of the learned trial judge. In making that ruling, he filed a valuable written opinion which has been of great aid to us in dealing with the case.

We conclude that his order was not in excess of the jurisdiction vested in his court in contested election cases; and, accordingly, deny the writ of prohibition, at the costs of the plaintiff in this court. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.