W. J. HOWEY COMPANY, a Corporation, Appellant, v. A. B. COLE, Special Deputy Commissioner of Finance of the State of Missouri, in Charge of McGIRK STATE BANK, a Corporation, and McGIRK STATE BANK, Respondents.*

Kansas City Court of Appeals. April 30, 1923.

1. **BILLS AND NOTES: Certificate of Deposit is Regarded as Promissory Note.** A certificate of deposit is regarded as a promissory note.

2. **————: Banks and Banking: Ordinary Promissory Note is a Bill Payable and Cannot be Issued Without Consent of Board of Directors.** An ordinary promissory note is a bill payable under section 11752, Revised Statutes 1919, prohibiting officer of bank from issuing such bills without consent of board of directors.

3. **————: ————: Cashier of Bank not Required to Obtain Consent of Board of Directors to Issue Certificates of Deposit.** A certificate of deposit being a written acknowledgment of receipt of sum of money on deposit with bank or banker, promising to pay to depositor, to bearer, to order of depositor, or to some other person or to his order, cashier of bank was not required under section 11752, Revised Statutes 1919, to obtain consent of board of directors to execute and issue certificate of deposit, statute not applying to contracts neces-

(34)

Howey Co. v. Cole et al.

sary to ordinary business of corporation usually performed by cashier.

4. **BILLS AND NOTES: Question of Indorsement and Transfer of Certificate of Deposit Payable to "Trustee," Held for Jury.** Where certificate of deposit was made payable to person as "trustee" and purchased on his indorsement and statement that he "was short of funds" there being no evidence that there was any trust estate or beneficiary, question of indorsement and transfer *held* for jury.

5. **DEMURRER: Evidence Viewed in Most Favorable Light to Plaintiff.** Upon demurrer evidence viewed in most favorable light to plaintiff.

6. **BILLS AND NOTES: Question Whether Certificate of Deposit Issued for Worthless Notes Held for Jury.** Question whether certificate of deposit was one of a number issued in exchange for worthless notes, *held* for jury.

7. ———: **Immaterial Whether Certificate of Deposit Issued without Consideration, if Negotiable and Purchased in Due Course.** Immaterial whether certificate of deposit was issued without consideration if it was negotiable and taken by plaintiff in "due course."

8. **EVIDENCE: Courts Will Judicially Notice That Financial Conditions in State, upon Which Former Case was Decided, do Not Now Exist.** Courts will judicially notice that conditions existing in this State at earlier period as to inequality in forms of currency and upon which particular conditions a former case was decided do not now exist.

9. **BILLS AND NOTES: Certificate of Deposit Payable in Current Funds Held Negotiable Within Meaning of Statute Requiring Negotiable Instrument to be Paid "in Money."** A certificate of deposit payable in current funds *held* negotiable within sections 788 and 793, Revised Statutes 1919, providing that in order for instrument to be negotiable it must be payable "in money," money being anything that does not circulate at a discount or represent less than the standard value of coin, dollars and cents at par.

---

*Corpus Juris-Cyc. References; Banks and Banking, 7 C. J., p. 549, n. 71; p. 552, n. 88; p. 555, n. 18; p. 558, n. 65; p. 647, n. 39; p. 648, n. 43 New. Bills and Notes, 8 C. J., p. 131, n. 78; p. 516, n. 24; p. 748, n. 54; p. 1063, n. 70; p. 1064, n. 81. Current Funds, 17 C. J., p. 409, n. 18. Evidence, 23 C. J., p. 120, n. 62. Money, 27 Cyc. p. 817, n. 47; Trial, 38 Cyc., p. 1543, n. 67.

Appeal from the Circuit Court of Moniteau County. — *Hon. J. G. Slate,* Judge.

REVERSED AND REMANDED.

*Guthrie & Conrad* and *Ira H. Lohman* for appellant.

*John M. Williams* for Respondent Cole.

*Embry & Embry* and *Roy D. Williams* for McGirk State Bank.

*Montgomery & Rucker* for *Amicus Curiae.*

BLAND, J.—This is an action upon a certificate of deposit in the sum of $1300, dated August 29, 1921, executed in favor of "Mark V. Packard, trustee," and "payable to the order of Himself in current funds on the return of this certificate properly endorsed 6 months after date, with 3 per cent interest per annum," and signed by "C. T. Moore, cashier." The case was tried before the court without the aid of a jury. At the close of all the testimony the court sustained defendants' demurrer to the evidence and plaintiff has appealed.

The facts show that the certificate in question was issued by C. T. Moore, cashier of defendant bank, in exchange for a note in the sum of $2,000, made by D. Mondell and secured by stock of a motor car company. Before maturity the certificate of deposit was endorsed by "Mark V. Packard, trustee" to plaintiff and plaintiff became its purchaser in "due course." At the time of the institution of this suit, the bank was insolvent and in the hands of defendant Cole, Special Deputy Commissioner of Finance of the State.

It is insisted by plaintiff that the court erred in sustaining the demurrer to the evidence. In support of the action of the court defendants contend that the certificate of deposit is a promissory note and is, therefore, a bill payable; that section 11752, Revised Statutes 1919,

prohibits a cashier of a bank from issuing bills payable without the consent of the board of directors; and that such consent not having been obtained, the certificate of deposit in question is void even in the hands of a bona-fide purchaser before maturity for value.

The evidence in relation to the authority of the cashier shows that Moore was one of the board of directors and was the manager of the bank. None of the other officers or directors of the bank issued certificates of deposit or cashier's checks. Moore received all of the deposits of the bank and had the custody of the bank's books. Moore was the executive officer, the manager, the *alter ego* of the bank, and there is no question but that he had power to issue certificates of deposit without the consent of the board of directors (7 C. J. 549, 552; 3 R. C. L., 444, 449; Bank v. Bank, 244 Mo. 554, 577), unless prohibited by the statute, supra. There is no evidence that such consent was ever obtained from the board or that the board knew anything about the issuance of the certificate or ratified the acts of Moore in issuing it.

It is true that a certificate of deposit is regarded as a promissory note. [Tiedeman on Commercial Paper, sec. 485; Daniels on Negotiable Instruments (6 Ed.) sec 1698.] It is also true that an ordinary promissory note is a bill payable and the statute prohibits an officer of the bank from issuing such bills without the consent of the board of directors. Under this section it has been held that a cashier has no right to borrow money for the bank and execute a note therefor. [Bank v. Lyons, 220 Mo. 538.] However, in a dissenting opinion in that case by GRAVES, J., it was said of section 11752, and section 11762, at l. c. 579:

"The purpose of these statutes was to prevent the cashier 'by virtue of his office' from borrowing money."

This statement by Judge GRAVES does not in any wise conflict with what is said in the majority opinion but is rather in harmony with it, and we think properly con-

strues the purposes of section 11752. Although a certificate of deposit is regarded as the promissory note of the bank, it is also "a written acknowledgment by a bank or banker *of the receipt* of a sum of money on deposit which the bank or banker promises to pay to the depositor, to bearer, to the order of the depositor, or to some other person or to his order." [7 C. J. 646, italics ours.]

The right of a cashier to execute and issue certificates of deposit is too well settled and his doing so has become such a general practice and custom in the banking business of this State, that to hold that section 11752 deprives him of that right unless a meeting of the board of directors is first called to pass upon each particular transaction of the kind, would seriously interfere with the operation of banks. Section 11752 requires only one meeting of the board each month and thereby contemplates that there may be but one of such meetings per month. The provision in regard to the meetings is inconsistent with the idea that the board should be in continuous session so that it can authorize the cashier in each instance to issue certificates of deposit. Such provision in banking acts do not apply "to such contracts or engagements as occur in or are necessary to the ordinary business of the corporation usually performed by the Cashier, or some other officer or agent of the bank." [Carey v. McDougald, 7 Ga. 84, 87.] See also opinion of ALLEN J., in Barnes v. Ontario Bank, 19 N. Y. 153, 166, 167, where it is said:

"The whole business of a bank is confided, in the first instance, to a board of directors, and they usually confer the power to transact its most important and daily financial operations to their cashier and teller. The cashier is usually intrusted with all the funds of a bank. He receives directly all moneys and notes. He delivers up all discounted notes on payment. He draws checks and drafts, and in short is the executive officer, through whom and by whom the whole moneyed operations of the bank, in paying or receiving debts or discharging them,

is to be conducted. It is his duty to apply the negotiable funds, as well as the money of the bank, to the payment of its debts. In receiving deposits did the Legislature ever contemplate that the depositor must wait for the president or vice-president to sign with the cashier a mere certificate or acknowledgment of the receipt of the money by the cashier? The answer to this question, is, to me, plain and conclusive. The power to receive must be a power to acknowledge the reception; and one follows as a necessary incident to the other.''

In the Barnes case, at l. c. 156, the statute provided:

''Contracts made by any such association, and all notes and bills by them issued  .  .  .  shall be⁻signed by the president and vice-president.''

We are, therefore, of the opinion that section 11752 has no application to the issuance of the certificate of deposit in question.

It is stated that by reason of the fact that the cer- tificate was made payable to Mark V. Packard, *Trustee,* he had no authority to sell the certificate to raise money for his individual use; that while a ''third person dealing with a trustee is not bound to see to the proper appli- cation of the trust fund,'' yet where such person does not profess to act on behalf of the trust estate but for him- self, such third person is not dealing with him in good faith, believing that the trustee is acting on behalf of the estate; that the word ''trustee'' being in the certificate of deposit was notice to plaintiff when it purchased the certificate that Packard did not own the certificate in- dividually. In this connection we are cited to the evi- dence showing under what circumstances the certificate was purchased by plaintiff. This evidence shows that Packard was in Chicago when he negotiated the certifi- cate to plaintiff; that Packard called at plaintiff's office and said that he ''was short of funds,'' and asked plain- tiff to buy the certificate of deposit. This was in the month of September, 1921. Plaintiff paid Packard $1,000

in cash and agreed to remit the balance of $300 at a later date, but the latter sum had not been paid by plaintiff at the time this suit was brought. There is no evidence whatever in the record tending to show that Packard was a trustee for any one, and the mere fact that Packard told plaintiff that he was "short of funds" does not show that he was not then on a mission of the trust estate, if there was one, and that the money was not needed to pay Packard's expenses in connection with some matter connected with such estate. As before stated, there is no evidence that there was any trust estate, therefore there is no evidence as to who the beneficiary was, and, of course, the beneficiary is not making any claim. It would appear then that the word "trustee" was a mere description of the person. There was certainly no evidence of any knowledge of any infirmity in the title or bad faith on the part of plaintiff in its transaction with Packard. [Reitherman v. Wheeler, 247 S. W. 222; Bank of Hale v. Linneman, 235 S. W. 178.] In the absence of evidence of the existence of a trust, we think that the endorsement and transfer of the certificate of deposit by Packard was sufficient. [Secs. 13425 and 818, R. S. 1919.]

The parties do not agree as to the circumstances under which this certificate of deposit was issued. There is evidence that the cashier issued several thousand dollars in certificates of deposit under very strange and peculiar circumstances. His story being that one Thompson, who had been in the town of McGirk on two or three occasions prior to the 20th of June, 1921, selling oil stock, returned about 3:00 o'clock of the morning of said day and wanted the cashier to take him to Jefferson City so that he could catch a train for Kansas City. Moore agreed to take him in his automobile. Thompson then told Moore that he had a draft for $1500 that he wanted to deposit in the bank and that Moore should get some blank certificates of deposit from the bank. Moore did this, obtaining a whole book of them. On the way to Jefferson City Thompson "entertained me (Moore)

nicely; a good fellow and everything; fine spirits and all that.'' When they neared Jefferson City, Thompson produced a flask (which proved to contain a drug) of which Moore partook. When coming out from under the influence of the drug and not fully understanding what he was doing Moore issued to Thompson $18,000 in certificates of deposit on the bank. Moore went home but did not notify anybody of what had occurred but called Thompson over the long distance telephone and told him ''what he (Thompson) would have to do, '' but Thompson said he had sold the certificates. Moore after trying for about sixty days to get an adjustment with Thompson, met him at California where Thompson told Moore that one Severn owed Thompson the sum of $5,000; that Severn owned some notes but could not pay Thompson until Severn got the cash out of them, and Thompson asked Moore to issue some additional certificates of deposit, stating that these notes were good. Moore wene to Kansas City to see Severn and talked to him about the notes and found that what Thompson had said about them was true. Severn told Moore that he was worth $70,000 and that he would endorse the notes personally. Moore agreed to take the notes and issued another batch of certificates of deposit amounting to $17,000. Severn turned out to have nothing and the notes were worthless. All of these transactions, including the execution of the certificate of deposit sued upon, were withheld from the knowledge of the directors of the bank.

The record is very vague as to whether the certificate of deposit sued on is one of those included in the second issue or certificates by Moore, but, in view of the fact that the court sustained the demurrer to the evidence, we must take it in the most favorable light to plaintiff, and there is evidence, we think, tending to show that the certificate sued on was not included in the second batch of certificates referred to, for the reason that the notes involved in the second issue of certificates were to be endorsed by Severn and there is nothing to show that Sev-

ern endorsed the $2,000 note upon which the $1300 certificate of deposit was issued, nor is there any evidence that Packard had anything to do with the issuance of the other certificates of deposit. Moore testified that he thought the Mondell note was a good one at the time he accepted it.

It is the contention of defendant that the certificate of deposit was one of the large second batch made by Moore; that it was not issued in exchange for money but a $2,000 note which proved to be worthless and the certificate was without consideration; that the certificate of deposit being payable "in current funds" was not negotiable. Therefore, it is claimed that plaintiff took the certificate subject to the defense of lack of consideration. However, it makes no difference whether the certificate of deposit was issued without consideration if the certificate was negotiable, and if plaintiff took it in "due course." [State ex rel. v. Greenville Bank, 187 S. W. 597; Barnes v. Bank of Ontario, supra, l. c. 168.] This leaves only one question for determination and that is whether the certificate payable in current funds is a negotiable instrument.

In an earlier day in this State and others the public was inflicted with a heterogeneous currency, some of which circulated at par with gold and silver and some much below par. At that time it was held in this and some other states that an instrument otherwise negotiable but payable in current funds or currency was not a negotiable instrument. In Farwell v. Kennett, 7 Mo. 595, the Supreme Court had under consideration a note executed in this State payable in currency, dated November 26, 1841. At page 597 of the opinion in that case the Supreme Court stated, ". . . the courts will judicially take notice in what light the medium or subject-matter of payment of a note or bill, is regarded in common understanding." In the light of that principle it declared the note non-negotiable. At the time the note in the Farwell case was executed it was held that money

meant specie or its equivalent and that currency that circulated at below par, that is, not on a parity with specie or its equivalent, was a mere commodity which had to be valued as any other commodity. It was for those reasons that the court held that the note was not negotiable. Since the decision in that case this State has adopted the uniform negotiable instrument law which provides that in order for the instrument to be negotiable it must be payable "in money." [Sec. 788, R. S. 1919.] Section 793, Revised Statutes 1919, provides that the validity or the negotiable character of the instrument is not affected by the fact that "it designates a particular kind of current money in which payment is to be made." Money is defined to be anything that does not circulate at a discount or represents less than the standard value of coin, dollars and cents, at par. [Klauber v. Biggerstaff, 47 Wisc. 551, 561.]

It is stated in Millikan v. Security Trust Co., 118 N. E. 568, 570 (Ind.):

"Beginning with the issue of United States Treasury notes, declared to have the quality of legal tender, it has been the practice of drawers of bills of exchange and makers of promissory notes to indicate payment in gold or silver or such notes, and from that time the terms 'current funds' and 'currency' have been used to designate any of these, all being current and declared by statute to be legal tender. The better rule now seems to be that instruments of the kind in question, payable in 'current funds' or in 'currency' are payable in money."

The case of Farwell v. Kennett, was decided in view of the particular conditions in existence at the time of the execution of the note involved in that case and those conditions were that there was currency circulating in this State at below par and the note had been executed in view of that situation. In that case the court cited with approval the following language appearing in the case of Luber v. Goodrich, 5 Cowen, 126,—"We may officially take notice that our own bank paper is in conformity

with common usage and common understanding, regarded as cash.'' So in the case at bar we judicially know that no such conditions as stated in Farwell v. Kennett, were existing in this State at the time the certificate of deposit involved in this case was executed, and that none of the currency circulating in this State at that time passed at a discount but it circulated upon a par with specie. We are, therefore, of the opinion that the case of Farwell v. Kennett, is not applicable to the facts in this case.

It is now almost universally held that the fact that an instrument which would otherwise be negotiable is not rendered nonnegotiable by reason of the fact that it is payable in current funds. [Bull v. Bank, 123 U. S. 105, 112; Forrest v. Safety B. & T. Co., 174 Fed. 345; Lacy v. Holbrook, 4 Ala. 88; Burton v. Brooks, 25 Ark. 215; Pryor v. Bank of America, 240 Ill. 100; Millikan v. Trust Co., supra; Gypsum Valley National Bank v. Dillenbeck, 205 Pac. 1022 (Kansas); Laird v. State, 61 Md. 309; Hatch v. First National Bank, 94 Me. 348; Tripp v. Curtenius, 36·Mich. 494; Butler v. Paine, 8 Minn. 284; Pardee v. Fish, 60 N. Y. 265; Bank v. Brown, 45 Ohio State 39; Tobin v. McKinney, 15 S. Dak. 257; McCormick v. Kampmann, 109 S. W. (Texas) 492; Illinois National Bank v. Exchange National Bank, 50 Wash. 418; Kirkwood v. First National Bank, 40 Nebr. 497; Pomeroy National Bank v. Huntington National Bank, 72 W. Va. 534; Klauber v. Biggerstaff, supra., 8 C. J. 131; 17 C. J. 409; 3 R. C. L. 889.]

We hold the certificate or deposit involved in the case at bar to be a negotiable instrument, and that the court erred in sustaining the demurrer to the evidence.

The judgment is, therefore, reversed and the cause remanded. All concur.