THE STATE ex rel. A. B. COLE, Deputy Commissioner of Finance, in Charge of McGirk State Bank, and McGIRK STATE BANK, v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

In Banc, February 17, 1925.

1. **CONFLICT OF DECISION: Certificate of Deposit: Issued by Cashier Alone: Bill Payable.** The Supreme Court has never ruled that a bank cashier's certificate of deposit is a bill payable within the

State ex rel. Cole v. Trimble.

meaning of Section 11752, Revised Statutes 1919, declaring that "no bills payable shall be made . . . except with the consent of the board of directors," and consequently the Court of Appeals in ruling that a certificate of deposit is not a bill payable within the meaning of that section, and that a certificate of deposit issued by the cashier of a bank who was its *alter ego*, without express consent of its board of directors, is valid, did not contravene a previous decision of this court.

2. ———: ———: **Payable to Trustee: Sold for Personal Use: Question for Jury.** Where the certificate of deposit was payable to "Mark V. Packard, trustee," and he sold it to plaintiff for a valuable consideration, the Court of Appeals, in ruling that, the evidence on the question whether Packard sold it for his own individual use and whether the plaintiff bought it in good faith in the belief that the sale was made for the benefit of the trust estate, not being conclusive, but disputed and conflicting, the question was one for the jury to determine, did not contravene the ruling in Turner v. Hoyle, 95 Mo. l. c. 343, where it was announced that "where a trustee, professing to act on behalf of the trust estate, induces a third person to buy trust property from him, the third person acting in good faith will acquire a good title, although the trustee converts the proceeds of the sale to his own use, but this rule does not apply when the trustee is not professing to act on behalf of the trust estate, or the third person is not dealing with him in good faith, believing that the trustee is making the sale on behalf of the trust estate."

3. ———: ———: **Payable in Current Funds: Negotiable.** A certificate of deposit payable "in current funds" is negotiable, and the Court of Appeals in so deciding did not contravene any previous decision of this court. The case of Farwell v. Kennett, 7 Mo. 595, holding that a note payable "in currency" was not a contract to pay in specie, was decided at a time of depreciated state currency, and has no application to present conditions or to such a certificate.

Citations to Headnotes: 1 and 2, Courts, 15 C. J. par. 518; 3, Banks and Banking, 7 C. J. par. 340, and Courts, 15 C. J. 518.

*Certiorari.*

WRIT QUASHED.

*Embry & Embry* and *Roy D. Williams* for relator.

(1)   The statute says ''no bills payable shall be issued by the cashier.'' If the certificate of deposit is a bill payable as found by the Kansas City Court of Appeals, then its issuance is prohibited by the statute, and the record should be quashed in this case.   The decision sought to be quashed is in conflict with the statute and in conflict with the Lyons case decided by this court construing the statute.   R. S. 1919, sec. 11752; Bank v. Lyons, 220 Mo. 555.   (2)   This court says a certificate of deposit is within the meaning of the phrase ''any indebtedness.''   If so it is a bill payable, and the record should be quashed in this case.   The phrase ''any indebtedness'' is no more comprehensive than the phrase ''no bill payable.''   State v. Satterly, 131 Mo. 485.   (3) The certificate of deposit is a forgery.   It attempted to create a bill payable against the bank.   It was as much without authority as the signature of the bank itself, by the cashier would have been.   The decision of the Court of Appeals recites facts sufficient for this court to pronounce the certificate a forgery under the statute. R. S. 1919, sec. 810. (4) Forgery is the fraudulent making or altering of any writing to the prejudice of another man's rights.   In re Cross, 43 Fed. 517; United States v. Long, 30 Fed. 678; 3 Words & Phrases, pp. 2900 et seq.; People v. Compton, 56 Pac. 44; United States v. Osgood, 27 Fed. 362.   (5)   An instrument may be a forgery, although the signature is genuine.   An offender may be guilty of the false making of an instrument although he signed and executed it in his own name, in case it be false in any material part.   Commonwealth v. Wilson, 12 S. W. 264, 89 Ky. 157, 25 Am. St. 528.   (6)   It is not a question of custom, and common practice by cashiers, that should control, as stated in the decision sought to be quashed.   It is a question of conflict of decisions and statute.   Furthermore the custom of cashiers to receive deposits in money and issue certificates of deposit therefor is quite different from issuing certificates and either giving them away or trading same for other personal property.   (7) The decision of the Court of Appeals in

commenting on the status of the certificates of deposit in the present case announces a doctrine and principle of law in conflict with that announced by this court. The decision in question should be quashed for that reason. Bank v. Bank, 244 Mo. 554.

*Ira H. Lohman* for respondents.

(1) The only question before this court on *certiorari* is whether there is a direct conflict in the law as declared by the Court of Appeals in its opinion and the law as declared by this court in its former decisions upon a similar state of facts. (2) It is the contention of relators that the opinion is in conflict with the opinion of Bank v. Lyons, 220 Mo. 538. The Court of Appeals in its opinion was not unmindful of the case of Bank v. Lyons, but the opinion clearly shows that that case was given due consideration by the Court of Appeals in its opinion, and that the opinion, instead of being in conflict with the decision of this court in that case is more in harmony with it. There is a vast difference between borrowing money on the credit of the bank and receiving a deposit. Both might be a liability of the bank, but the cashier has, by virtue of his office, the inherent power to receive deposits and give receipts therefor. Likewise a bank cashier has the inherent power to certify a check and the bank is liable on a check certified by the cashier whether the party drawing the check had funds in the bank or not. The relators throughout the whole of this case overlooked the fact that the cashier is the agent of the bank and not alone the agent of the board of directors and his acts within the scope of his employment are binding on the bank. 7 C. J. p. 549, sec. 160 and p. 552, sec. 163; Bank v. Bank, 244 Mo. 577; Bank v. Hughes, 62 Mo. App. 581; Bank of Senath v. Douglass, 178 Mo. App. 644, 686. A certificate of deposit of its very nature is not a note or bill payable. It is simply a receipt for money on deposit, the receipt being negotiable in its character, depending upon the wording of the certificate. The cashier has the same right to issue a certificate that

he would have to certify a check. Robinett v. Bank, 178
Mo. App. 430; 5 Cyc. 520, 521; 3 R. C. L. p. 449, par. 77;
Merchants National Bank v. State National Bank, 10
Wall. (U. S.) 604, 649; Martin v. Webb, 110 U. S. 7.
(3) It is claimed by relators that since the certificates
of deposit were made payable to Mark V. Packard, trus-
tee, and that the opinion is in conflict with Turner v.
Hall, 95 Mo. 343, there is no similarity whatever in the
facts in the case at bar and in the Turner case. The
Turner case simply decides that a person has no right
to pledge trust funds as security for individual debts,
which is a well-settled rule in Missouri, and of course,
the beneficiary was allowed to recover the trust fund.
In the case at bar there is no evidence of any trust, no
evidence as to who the beneficiary was, if any, and the
beneficiary, if any is not making any claim. The statute
covers matters of this kind and the Court of Appeals
simply followed the Missouri statute. Sec. 13426, R. S.
1919. The statute also governs endorsements. Secs.
811, 817, 818, 830, 837, 838, 842 and 843, R. S. 1919.
(4) It is further contended that the opinion is in con-
flict with Farwell v. Kennett, 7 Mo. 595, as the certificate
was payable in current funds. In that case the note was
payable in currency and not in current funds—a differ-
ent state of facts from the case at bar. This case, how-
ever, is more a matter of history now than authority,
as at the time it was decided currency did not circulate as
of equal value with gold and silver. But currency might
mean a depreciated currency, but current funds are cur-
rent by law, funds that circulate as money, funds that
are convertible into gold and silver, at par, cash, some-
thing equivalent to gold and silver, funds that circulate
at par without discount. Since the decision of the case
of Farwell v. Kennett a new statute has been enacted in
Missouri, and under this statute the validity and nego-
tiable character of instruments are not affected by the
fact that it designates a particular kind of "current
money" in which payment is to be made. Sec. 793, R.
S. 1919. (5) The case at bar is a case for the appli-

cation of the well-known principle of law that where one of two good men stand to lose, he should lose who has opened the door for the loss to enter. Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 282; Bank v. Armstrong, 62 Mo. 67; Neuhoff v. O'Reilly, 93 Mo. 164; Bank v. Bank, 71 Mo. 183. (6) The bank is estopped to deny the authority of the cashier where it has entrusted the entire management to the cashier. 3 R. C. L. par. 71, p. 444.

JAMES T. BLAIR, J.—The record which the writ brings here is that of the Kansas City Court of Appeals in W. J. Howey Co., a corporation, v. A. B. Cole, Deputy Commissioner of Finance, and McGirk State Bank, in an action on a certificate of deposit issued by the cashier of the McGirk State Bank. The trial court sustained a demurrer to the evidence, and W. J. Howey Co. appealed. The Court of Appeals reversed the judgment and remanded the cause. Relators in this proceeding contend that court's opinion conflicts with certain decisions of this court.

In its opinion the Court of Appeals stated the record showed that the certificate of deposit in question was dated August 29, 1921, was for the sum of $1300, and was "executed in favor of 'Mark V. Packard, trustee' and 'payable to the order of himself in current funds on the return of this certificate properly indorsed six months after date with three per cent interest per annum' and signed C. T. Moore, cashier;'" that the certificate "was issued by C. T. Moore, cashier of defendant bank, in exchange for a note in the sum of $2,000, made by D. Mondell and secured by stock of a motor car company. Before maturity the certificate of deposit was indorsed by 'Mark V. Packard, trustee' to the plaintiff, and plaintiff became its purchaser in 'due course.' At the time of the institution of this suit the bank was insolvent and in the hands of defendant Cole, Special Deputy Commissioner of Finance of the State." The court further stated that the "evidence with relation to the authority

of the cashier shows that Moore was one of the board
of directors and was the manager of the bank. None of
the other officers or directors of the bank issued certifi-
cates of deposit or cashier's checks. Moore received
all of the deposits of the bank and had the custody of the
bank's books. Moore was the executive officer, the man-
ager, the *alter ego* of the bank, and there is no question
he had power to issue certificates of deposit without the
consent of the board of directors [citing authorities] un-
less prohibited by" Section 11752, Revised Statutes 1919.

With respect to the circumstances under which the
certificate was purchased by W. J. Howey Co., the court
stated the evidence showed that Packard "was in Chicago
when he negotiated the certificate to plaintiff; that Pack-
ard called at plaintiff's office to buy [sell?] the certifi-
cate of deposit" in September, 1921, and "plaintiff paid
$1000 in cash and agreed to remit the $300 balance at a
later date" but this balance had not been paid at the
time of suit brought. "There is no evidence whatever
in the record tending to show that Packard was a trustee
for any one, and the mere fact that Packard told plain-
tiff he was 'short of funds' does not show that he was
not then on a mission of the trust estate, if there was
one, and that the money was not needed to pay Packard's
expenses in connection with some matter connected with
such estate. As before stated, there is no evidence as to
who the beneficiary was, and, of course, the beneficiary
is not making any claim."

Relators contend the opinion is in conflict with de-
cisions of this court in holding that (1) certificates of
deposit are not within Section 11752; (2) the fact the
certificate was payable to Mark V. Packard, *trustee,* did
not, in the circumstances, defeat the sale to W. J. Howey
Co.; and (3) a certificate payable in "current funds"
is negotiable.

I. The Court of Appeals held that Section 11752,
Revised Statutes 1919, did not apply to certificates of
deposit, and that these could be issued by one in the po-

sition Moore held without specific authorization by the

**Bill Payable: No Conflict.** board of directors. The statute provides, among other things, that "no bills payable shall be made, and no bills shall be redis-counted by the bank, except with the consent of the board of directors," with an exception not pertinent to this case. The Court of Appeals held that certificates of deposit did not come within the words "bills payable" in the sense in which they are used in the quoted statutory provision. It is contended by relators that this ruling is in conflict with Union National Bank v. Lyons, 220 Mo. l. c. 554. The argument in the brief is that a certificate of deposit is held in many states "to be, in substance, a promissory note and governed in most cases by the same general rule." Decisions from other jurisdictions and text-books are cited on this point, but no decision of this court is among them. It is then argued that if a certificate "is the promissory note of the bank, then it is a bill payable" and if issued without the board's specific authority it comes within Section 11752 and is void. The argument does not show conflict. The Court of Appeals did not hold that bills payable issued by the cashier without the requisite authority were valid. Its argument concedes that anything issued by a Missouri bank which comes within the quoted language of that section and is not executed under the required authority, is void, and cites and follows the Lyons case on that point. What the court did hold was that a certificate of deposit was *not* a bill payable in the sense of that section and, therefore, was not governed by it. This question was not decided in the Lyons case or in any other decision of this court so far as the briefs show or additional examination discloses. In these circumstances there can be no conflict with the Lyons case. The question decided by the Court of Appeals is not a sham question. It is one of some difficulty, and there is much to be said for the conclusion the court reached. In any event, there was no conflict with the decision cited, because the question the Court of Appeals decided was not in that case,

and the correctness of the decision in that case is not denied, but affirmed, by the Court of Appeals.

II. It was argued in the Court of Appeals that since the certificate was made payable to "Mark V. Packard, *trustee*," he had no authority to sell the certificate to raise money for his individual use; that the word "trustee" was notice that Packard did not own the certificate. It is urged that the holding of the Court of Appeals on this point is in conflict with the decision in Turner v. Hoyle, 95 Mo. l. c. 343. In discussing that decision counsel concede it holds that one who, in good faith, buys from a trustee professing to act for and on behalf of the trust estate, will get good title and is not concerned with the trustee's disposition of the proceeds (Sec. 13426, R. S. 1919), but rely upon the holding that this conceded rule does not apply when "the trustee is not professing to act for and on behalf of the trust estate, or the third party is not dealing with him in good faith, believing that the trustee is making the sale or getting the advance on behalf of the trust estate." It is argued that "the certificate was payable to trustee, and Howey says Packard was short of funds. It is further significant that so far as the record shows, Howey had never met Packard more than a few hours before the transaction between them, and further that $300 was withheld." The relators' position necessarily is that the evidence conclusively established facts which bring the transaction within the excerpt quoted above from Turner v. Hoyle. The answers which the Court of Appeals makes to this argument are set out in the statement. That court did not question the rule relied upon. It held, in effect, that the peculiar facts of this case left the question to the jury, at most. No case is cited with which it is contended this specific holding conflicts. Its holding, in legal effect, is that the evidence did not *conclusively* show that the rule relators invoke was applicable as a matter of law. Support for this view is found in Sections 811, 817, 818, 830, 837, 838, 842 and

*Trustee For Individual Use.*

843, Revised Statutes 1919, of the Negotiable Instruments Act. There is no conflict.

III.   It is insisted that since the certificate was payable "in current funds" it was non-negotiable and, therefore, let in certain defenses. It is said the holding of the Court of Appeals to the contrary conflicts with the decision of this court in Farwell v. Kennett, 7 Mo. 595. In that case an instrument in the form of a promissory note was made payable "in currency." The court held that this was not a promise to pay in "money in specie" and was non-negotiable. The case was well decided at that time. Then there were many kinds of State currency of varying values. The court held that it would take judicial notice "in what light the medium or subject-matter of payment of a note or bill is regarded in common understanding. . . . At the date of this bill, currency was not regarded as cash by the community. In framing their notes and bills, the word was adopted with the express view of preventing a demand for cash or specie. The value of currency was below the specie standard and fluctuating, receding from and advancing to the value of the specie. The word currency was introduced in the sense in which it is understood after we were afflicted with a depreciated currency and to prevent a demand for lawful money. Experience has taught us that there is a wide difference between the currency contemplated by law and the actual currency." It is clear this decision no longer has force. The depreciated currency to which the court then referred has disappeared. The word now means anything in general, lawful use as money and accepted as such without discount. The cases are practically all the same way. In Millikan v. Security Trust Co., 187 Ind. 307, the Supreme Court of Indiana had before it the question decided by the Court of Appeals in this case, and held the same way. It said:

"Beginning with the issue of United States Treasury notes, declared to have the quality of legal tender, it has been the practice of drawers of bills of exchange

and makers of promissory notes to indicate payment in gold or silver or such notes, and from that time the terms 'current funds' and 'currency' have been used to designate any of these, all being current and declared by statute to be legal tender.   The better rule now seems to be that instruments of the kind in question, payable in 'current funds' or in 'currency' are payable in money. [Citing decisions.]   We therefore hold that this certificate of deposit is payable in money and is negotiable as an inland bill of exchange.''

In addition, the statute (Sec. 793, R. S. 1919) specifically provides that: ''The validity and negotiable character of an instrument are not affected by the fact that (it); . . . (5) designates a particular kind of current money in which the payment is to be made.''   The Farwell case was well enough in its time, but itself is direct authority for holding that under present and changed conditions the fact that an instrument is payable in '' current funds'' is not enough to render it non-negotiable, and in that particular it agrees with practically all the authorities, as the case just cited and others in the brief show.   There is no conflict in this respect.

Our writ is quashed.

PER CURIAM:—The foregoing opinion of JAMES T. BLAIR, J., in Division One is adopted by Court in Banc as its opinion.   All concur, except *Walker, J.*, absent, and *White* and *Woodson, JJ.*, who dissent.