W. J. HOWEY CO., RESPONDENT, v. COLE, SPECIAL DEPUTY COMMISSIONER OF FINANCE OF THE STATE OF MISSOURI ET AL., APPELLANTS.*

Springfield Court of Appeals.   January 20, 1928.

*Corpus Juris-Cyc References: Banks and Banking, 7CJ, section 160, p. 550, n. 73; Bills and Notes, 8CJ, section 722, p. 516, n. 21; section 1292, p. 984, n. 60; Statutes, 36 Cyc, p. 1146, n. 17, p. 1148, n. 31.

*S. C. Gill* and *Embry & Embry* for appellants.

*Ira H. Lohman* for respondent.

BAILEY, J.—Plaintiff filed his petition in the Moniteau county circuit court on the 14th day of April, 1922, seeking to recover on a certain time certificate of deposit purported to have been issued by the McGirk State Bank on or about the 29th day of August, 1921, in the sum of thirteen hundred dollars ($1300) payable six months after date to the order of one "Mark V. Packard, Trustee." The McGirk State Bank closed its doors on the 6th day of September, 1921, and defendant A. B. Cole, as Special Deputy Commissioner of Finance of this State, took charge of its affairs on the 23rd day of September, thereafter, and is now in charge thereof. This case was first tried in the circuit court of Moniteau county, where a demurrer to plaintiff's evidence was sustained and the cause then went to the Kansas City Court of Appeals on appeal by the W. J. Howey Company. The Court of Appeals reversed the judgment and remanded the cause. The opinion of that court is reported in 269 S. W. 955. Thereafter, on *certiorari*, the Supreme Court held the Kansas City Court of Appeals was not in conflict with any decisions of the Supreme Court and its writ theretofore issued was quashed. State ex rel. Cole v. Trimble et al., 269 S. W. 959.

Thereafter, on change of venue, the cause was transferred to the Camden county circuit court and came on for trial, to a jury, in March, 1927: At the close of all the evidence the jury, at the court's direction, returned a verdict for plaintiff and from the judgment entered thereon, defendants have appealed.

The facts are fully stated in the two opinions heretofore referred to and only a brief reference need be made thereto. The time certificate in question was issued in August, 1921, by C. T. Moore, cashier of defendant bank, at the solicitation of one Thompson, which certificate is in words and figures as follows:

"McGirk State Bank. 80 1638 No. 244.

"Certificate of Deposit, McGirk, Missouri, August 29, 1921.

"This certifies that Mark V. Packard, Trustee, has deposited in this bank thirteen hundred No/100 dollars ($1300), payable to the order of himself in current funds on the return of this certificate properly endorsed six months after date with three per cent interest per annum.

C. T. MOORE, Cashier.

"No interest after maturity.

"Not subject to check.

"McGirk State Bank, (Seal).

"McGirk, Mo.

"(Indorsement on back)

"Mark V. Packard, Trustee."

In June, 1921, Moore had issued several certificates of deposit, bearing different dates, to Thompson or other persons under most unusual circumstances. The pitiful story, as told by Moore, may be gleaned from a reading of the opinion by the Kansas City Court of Appeals, supra. In an effort to recover what had been lost to his bank by the issuance of the certificates in June, 1921, Moore was induced by Thompson, who evidently wielded a strange power over the erstwhile cashier, to issue a second batch of time certificates of deposit aggregating quite a large amount. The only consideration for these latter certificates was certain promissory notes which afterwards turned out to be worthless.

The evidence is clear and undisputed that all the acts of Moore in issuing both the first and second lot of certificates were done without the express authority, knowledge or consent of the board of directors of the defendant bank and that they have never in any manner ratified the issuance thereof. No money was ever deposited nor did the bank receive any benefit whatever from the transactions. It is clear from Moore's testimony that the time certificate sued on was one of the second batch issued in August, 1921, for which he received the worthless notes heretofore mentioned. This time certificate of deposit for $1300 was purchased prior to its maturity by plaintiff under circumstances hereinafter referred to.

Defendants contend that (1) the certificate of deposit is a forgery and therefore void; (2) that the certificate of deposit is void because not issued by authority of the board of directors; (3) and that the certificate of deposit being issued to a trustee, that fact was sufficient to impart notice, and the jury should have been permitted to pass upon the question as to plaintiff's good faith in purchasing the certificate.

All these propositions were considered by the Kansas City Court of Appeals when this case was reviewed in that court. The first point made is that the certificate of deposit is a forgery and void. The theory is that since the certificate of deposit was issued by the cashier purporting to be issued by the bank and since he had no authority to issue the certificate, it was, in effect, a forgery. There is no question but that Moore, who issued the certificates, was the managing head in charge of the conduct of the bank, duly elected and acting as cashier thereof. Had the directors authorized the issuance of the certificate sued on that certificate would no doubt have been issued by him as cashier in the same manner and form as it was issued. It could have been false only on the theory that the law did not permit the cashier to issue such a certificate without authority of the board of directors and since he did so issue it, it was not the act of the bank and therefore a forgery. In other words, if there be any merit in defendants' first proposition, it must be because the second

contention advanced is tenable i. e., that the certificate is void because not issued with the consent of the board of directors of the bank. This involves a construction of section 11752, Revised Statutes 1919, which among other things provides that "No bills payable shall be made, and no bills shall be re-discounted by the bank, except with the consent of the board of directors." In construing this section the Kansas City Court of Appeals held that while it is true a certificate of deposit is regarded as a promissory note and that ordinarily promissory notes are "bills payable," nevertheless "the right of a cashier to execute and issue certificates of deposit is so well settled, and his doing so has become such a general practice and custom in the banking business of this State, that to hold that section 11752 deprives him of that right, unless the board of directors is first called to pass upon each particular transaction of the kind, would seriously interfere with the operation' of banks." Substantial authority is cited in support of the court's holding that section 11752 has no application to the issuance of the certificate of deposit in this case. We agree with the views of the Kansas City Court of Appeals on this proposition. The history of the section referred to strengthens the position taken.

The provision that "no bills payable shall be made, etc., except with the consent of the board of directors" was first enacted into law in the year 1897. At the time that law was passed, section 2752, Revised Statutes 1889, was in effect, which section set out in detail the various items to be included in the sworn statement of its affairs to be made by the officers of a State bank when required by law. This form of statement lists as liabilities the following:

"Capital stock paid in.
"Surplus funds on hand.
"Deposits subject to draft by banks and bankers.
"Deposits subject to draft by individuals and others.
"Deposits subject to draft at given dates.
"Bills payable and bills re-discounted."

This section was re-enacted in 1897 containing the same provisions as above set forth. It is held that in attempting to construe a statute it is proper to take into consideration the prior state of the law on the subject and all changes therein. [Gabriel v. Mullen, 111 Mo. 119, 19 S. W. 1099.]

It is also true that statutes *in pari materia* are to be construed as one law. [State ex rel. v. Glover, 126 Mo. 652, 29 S. W. 718.]

With these and kindred canons of construction in mind it seems clear to us that the Legislature of 1897 never intended to place time certificates of deposit in the same category with bills payable insofar as the authority of an officer of the bank to make them is concerned. The law then in effect and the law as re-enacted at the very

session of the legislature when the provision authorizing *bills payable* to be made only with the consent of the board of directors, listed certificates of deposit separately from bills payable. Practically the same classification of a bank's liabilities is in common use to this day in the form of reports required by the state bank commissioner as well as the comptroller of currency of the Federal government. The Legislature of 1897 must have had in mind this statutory distinction between certificates of deposit and bills payable when they passed the law which would effectually stamp as void an act of the cashier in making a bill payable or re-discounting a bill without the consent of the board. The evil intended to be remedied was no doubt to prevent a cashier or other officer from using the bank's credit for his own private purposes. It was not intended to place such restrictions on the daily conduct of the bank as to materially impair the bank's usefulness. This, we think, would be the practical result of holding certificates of deposit to be bills payable within the meaning of the statute heretofore referred to. We therefore hold against defendants on this contention.

The only other point of importance relates to the question of plaintiff being a holder in due course. It is not disputed that plaintiff made a prima-facie case by introducing in evidence the certificate of deposit sued on. But defendant relies upon the fact that the certificate of deposit was made payable to "Mark V. Packard, Trustee," as sufficient to at least make it a question for the jury as to whether or not plaintiff acted in good faith. As to this proposition the Kansas City Court of Appeals held that, "there is no evidence that there was any trust estate; therefore there is no evidence as to who the beneficiary was, and, of course, the beneficiary is not making any claim. It would appear then that the word 'trustee' was a mere description of the person. There was certainly no evidence of any knowledge of any infirmity in the title or bad faith on the part of plaintiff in its transaction with Packard." We believe under the facts in this case that the foregoing statement of the law is correct. It may be conceded that the great weight of authority seems to favor the rule that when the term "trustee," "executor" or the like, are used after the name of the payee in a negotiable instrument, it denotes something more than a mere description of the person. [Sanford v. Van Pelt, 282 S. W. (Mo. Sup.) 1022, 3 R. C. L. 1082.]

Our courts, however, prior to the decision by the Supreme Court in the Van Pelt case, supra, have held to the view that the word "guardian," "trustee," etc., appended to the name of the payee in a note, are merely *descriptio personae* and do not affect the title of the indorsee. [Thornton v. Rankin, 19 Mo. 193; Mayer v. Bank, 86 Mo. App. 108; Powell v. Morrison, 35 Mo. 244; Eyerman v. Bank, 84 Mo. 408; Sparrow v. Bank, 103 Mo. App. 338.]

In the Van Pelt case it was held that the word "trustee," following the name of a grantee in a deed was not merely *descriptio personae*, but was evidence of the fact or existence of a trust and refused to be bound by the ruling in the Morrison case, supra, to which specific reference is made. The Van Pelt case was a direct suit by the beneficiary of a trust estate to establish a trust. No distinction is made between an assertion of title by the beneficiary of a trust against the purchaser from the trustee and the assertion of some right by the maker of the instrument creating the trust as against such purchaser. That such distinction exists is well settled. [See note to Ford v. Bank, 1 L. R. A. 188.]

We are inclined to the belief that if Mark V. Packard, trustee, had disposed of the certificate of deposit here in question without authority and in violation of a trust, then the word "trustee" would have constituted such notice as to have effectively made of the purchaser a constructive trustee for the benefit of the *cestui que trust*, if there was one. The negotiability of the instrument was not thereby destroyed. [Fox v. Bank, 35 L. R. A. 678.]

But granting that the word "trustee" following the name of the payee indicated the existence of a trust estate, its effect, if any, would be simply to put plaintiff upon inquiry as to the character of the trust and the right of the trustee to dispose of the certificate. Insofar as this record discloses, such inquiry would have revealed nothing in regard to the existence of a trust estate. No beneficiary is asserting any right whatever. Inquiry would likewise have shown no limitation on the trustee's authority to sell the note. It is therefore, our opinion the word "trustee" following the name of the payee did not in itself destroy plaintiff's position as a holder in due course. [Tradesmen's National Bank v. Looney et al., 42 S. W. 149, 38 L. R. A. 837; Dollar Savings & Trust Co. v. Crawford, 70 S. E. 1039, 33 L. R. A. (N. S.) 587.]

There is some evidence tending to show fraud in the procuring of the certificate. This evidence placed upon plaintiff the burden of evidence to show lack of knowledge of such facts. To meet this issue plaintiff offered uncontradicted evidence indicating that it paid full value for the certificate before its due date, in good faith and without knowledge of any infirmity in the instrument or defect in the title. Such evidence being uncontroverted it became the duty of the trial court to direct a verdict in plaintiff's favor. [Downs v. Horton, 287 Mo. 414, 230 S. W. 103.]

The judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Bradley, J.,* concur.